**Emil GOLDHABER, et al., Plaintiffs,**

v.

**William E. FOLEY, et al., Defendants.**

**Civ. A. No. 81–0672.**

United States District Court,
E. D. Pennsylvania.

July 16, 1981.

Edward I. Swichar, Faith R. Greenfield, Wexler, Weisman, Forman & Shapiro, P. C., Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, U. S. Atty., Antoinette R. Stone, Asst. U. S. Atty., Philadelphia, Pa., for federal defendants.

Kenneth E. Aaron, Davidson & Aaron, Philadelphia, Pa., for defendants Abovitz and Nitchie.

OPINION

BROTMAN,* District Judge.

In recent years the courts have frequently been thrust into the unenviable position of overseeing various governmental institutions—for example, school systems, mental hospitals, and prisons—in order to prevent or redress deprivations of constitutional and statutory rights. These cases raise troublesome questions regarding the role of courts in our society and the competency of judges to render appropriate relief. The instant case presents an interesting variation on this theme; here we are asked to resolve a dispute regarding the administration of an institution with which we are uniquely familiar—the courts.

Plaintiffs in this action are the Honorable Emil F. Goldhaber, a Judge of the United States Bankruptcy Court for the Eastern District of Pennsylvania, and two court reporters currently serving that court, Martin Katz and Helen Mattis.[1] Defendants are William E. Foley, Edward Garabedian, Donald Seay, and Paul R. Tuell ("federal defendants"), all of whom are officials of the Administrative Office of the United States Courts ("A.O."), and Rhoda Abovitz and Sally Nitchie ("Abovitz & Nitchie" or "non-federal defendants"), who have contracted with the federal defendants to provide court reporting services in the bankruptcy court in Philadelphia. In essence, plaintiffs raise two claims: first, that judges of the bankruptcy court have exclusive authority to appoint reporters for their court pursuant to the Bankruptcy Reform Act of 1978; and second, that the federal defendants acted arbitrarily, capriciously, and beyond the scope of their authority in awarding the bankruptcy court reporting contract to Abovitz & Nitchie. The defendants contend that the A.O. has the authority to determine whether contractual reporting services should be used in lieu of full-time reporters and the authority, if it determines to use contract reporters, to enter into the

___

* Honorable Stanley S. Brotman, United States District Court for the District of New Jersey, sitting by designation. 28 U.S.C. § 292(b).

1. Ms. Mattis is a court reporter for the Honorable William A. King, Jr., who is not a party to this action.

appropriate contracts. Moreover, the federal defendants argue that they acted rationally and within the scope of their authority in selecting Abovitz & Nitchie to provide reporting services for the bankruptcy court. Subject matter jurisdiction is predicated on 28 U.S.C. § 1331. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Currently being considered by the court are defendants' motions for dismissal or summary judgment on the grounds of lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b), 56. Also before the court is plaintiffs' motion for a preliminary injunction. For the reasons indicated below, we shall deny defendants' motion to dismiss but partially grant the motion for summary judgment. In addition, we find that preliminary injunctive relief is warranted. In accord with Rule 52(a), the court now renders the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, Judge Emil F. Goldhaber, and Judge William A. King, Jr. (not a party to this action) are United States Bankruptcy Judges for the Eastern District of Pennsylvania. Martin Katz and Helen Mattis, plaintiffs, are professional court reporters appointed by plaintiff Goldhaber and by Bankruptcy Judge William A. King, Jr., respectively.

2. At all times relevant to this proceeding, federal defendant William E. Foley has been the Director of the Administrative Office of the United States Courts; federal defendant Edward Garabedian has been its Assistant Director; and federal defendants Donald Seay and Paul R. Tuell have been contracting officers of the Administrative Office of the United States Courts. The federal defendants have been served with process by means of certified mail.

The federal defendants solicited bids for court reporting services for the United States Bankruptcy Court for the Eastern District of Pennsylvania and, over the objections of plaintiff Goldhaber and Bankruptcy Court Judge King, the federal defendants awarded the court reporting contract to court reporters who had not been appointed by plaintiff Goldhaber and Judge King.

3. Defendants Rhoda Abovitz and Sally Nitchie, d/b/a Abovitz & Nitchie, are the court reporters to whom the federal defendants awarded the bankruptcy court reporting contract in the Eastern District of Pennsylvania.

4. (a) Plaintiffs Martin Katz and Helen Mattis, for the past 23 years, have been the official bankruptcy court reporters for the United States Bankruptcy Court for the Eastern District of Pennsylvania by reason of their judicial appointment to such position and pursuant to contract.

(b) Plaintiffs Katz and Mattis render services to the bankruptcy court of a technical nature.

5. In or about October of 1980, the federal defendants, while acting under color of title and authority, caused solicitations to be mailed out to obtain competitive bids in the Eastern District of Pennsylvania. The federal defendants' objective was to obtain a contract to provide court reporting services for the United States Bankruptcy Court for the Eastern District.

6. (a) In February of 1981, the federal defendants awarded the court reporting contract for the United States Bankruptcy Court for the Eastern District of Pennsylvania to Abovitz & Nitchie, who reside in the Eastern District of Pennsylvania. Abovitz & Nitchie are expected to perform all of the services under the court reporting contract in this District.

(b) Abovitz & Nitchie's bid was the lowest one submitted in response to the solicitation.

(c) The bids of plaintiffs Katz and Mattis were not accepted.

7. The bid solicitation of the federal defendants provided that the successful bidder would provide services principally from 8:00 a. m. through 5:30 p. m., Monday through Friday, excluding holidays.

8. There is no evidence whether full-time reporters are warranted or would be cost-efficient in the bankruptcy court. There is no evidence that any standards have been adopted for determining whether full-time reporting services are warranted.

9. The bid solicitation's Terms and Conditions, Contracts for Court Reporting Services ("Terms and Conditions") [P–2], provided in pertinent part at No. 5 that

"(a) each reporter shall possess at least four (4) years of prime court reporting experience, or four years of experience reporting proceedings of at least equal difficulty.

"(b) Notwithstanding subsection (a), any Reporter who possesses a Certificate of Merit from the National Shorthand Reporters Association ["NSRA"] (or certification from any other organization or governmental agency which evinces, as the Contracting Officer may determine in his sole discretion, at least equivalent skills) may perform reporting services under this Agreement."

10. The Solicitation Preparation Instructions provided as follows [P–1]:

(a) At No. 2, that "an offeror must request in writing any explanation regarding the meaning or interpretation of the . . . . terms and conditions . . . ."

(b) At No. 11, that "the offeror must have adequate facilities, employees, and equipment to enable the offeror to commence performance upon award . . . using qualified employee reporters."

(c) At No. 12, that the offeror must furnish "evidence of the offeror's experience in performing similar services, and . . . a brief biographical sketch for each reporter . . . which evinces the qualifications of the reporter . . . .. The Contracting Officer may inspect an offeror's facilities for the purpose of determining whether the offeror possesses the necessary qualifications."

(d) At No. 13, the "Contracting Officer will accept the offer of the responsible offeror whose responsive offer, conforming to the solicitation, will be most advantageous to the Government, price and other factors considered."

11. (a) In order to obtain a Certificate of Merit from the NSRA, a court reporter must first have a professional membership in the NSRA (*i.e.,* be a registered professional reporter), and thereafter must pass a two-part test, consisting of a written knowledge test in the areas of shorthand writing, transcribing, legal and judicial procedures, office procedures and operating practices, and professional development, and a dictation test including literary matter (200 wpm), jury charge (240 wpm), and testimony (260 wpm).

(b) In order to obtain a professional membership in the NSRA (*i. e.,* become a registered professional reporter), one must be an NSRA member and must pass a two-part test consisting of a written knowledge test in the areas of, *inter alia,* English, grammar, punctuation, specific terminology, problems and needs of transcriber, court rules and procedures, stipulations, pleadings, and professional conduct and a dictation test consisting of literary matter (180 wpm), jury charge (200 wpm), testimony (225 wpm).

(c) Passing the examination for professional membership in the NSRA (*i. e.,* becoming a registered professional reporter) is not equivalent to holding the higher level Certificate of Merit.

(d) In order to meet the requirements set forth in No. 5(a) of the "Terms and Conditions," which provides that "each court reporter shall possess at least four (4) years of prime court reporting experience, or four years of experience reporting proceedings of at least equal difficulty," a court reporter would need four years of court reporting experience in a court or would need four years of experience transcribing and recording other proceedings of at least equal difficulty.

(e) The phrase "prime court reporting experience" means recording and transcribing courtroom proceedings.

(f) Transcribing and reporting pre-trial depositions is not equal in difficulty to transcribing and reporting court proceedings.

12. The nonfederal defendants and their employees fail to meet any of the three standards set forth in Terms and Conditions of the bid solicitation under Item 5, Qualifications of Reporters [P–2].

(a) Not a single one of the nonfederal defendants and their employees have four years of "prime court reporting experience."

(b) Not a single one of the nonfederal defendants and their employees have a Certificate of Merit from the NSRA, or any certification evincing equivalent skills.

(c) The nonfederal defendants and their employees also fail to meet the final alternative standard of at least four years of "reporting proceedings of at least equal difficulty" to prime court reporting experience.

(1) The nonfederal defendants and their employees' experience in performing shorthand reporting services is limited to pre-trial depositions and the reporting of arbitrations, conferences, shareholders' meetings and Labor Department hearings.

(2) Uncontested testimony showed that reporting court proceedings is more difficult than reporting depositions, shareholders' meetings, conferences, Labor Department hearings and arbitrations.

13. On or about March 20, 1981, the nonfederal defendants employed Diane Bivens [P–5] who also fails to meet any of the three alternative qualifications in the "Terms and Conditions," Item 5 [P–2]. . As noted in Mr. Aaron's letter of March 20, 1981 to Mr. Szwajikos [P–5], the nonfederal defendants relied solely upon Mrs. Bivens' status as a professional reporter to qualify her under Item 5; however, such registration fails to meet any of the three alternative standards set by the bid solicitation. The federal defendants did not object to Mrs. Bivens acting as the court reporter in the bankruptcy court, even though she is unqualified under the federal defendants' own bid requirements.

14. The federal defendants violated their own bid standards, which required them to "accept the offer of that responsible offeror whose responsive offer ... will be most advantageous to the Government, price and other factors considered," in that:

(a) The offer of the nonfederal defendants was not responsive in that the biographical sketches attached thereto did not show that the nonfederal defendants possessed the required qualifications;

(b) The federal defendants did not offer any evidence at trial to show that they considered any factors other than price in awarding the contract to the nonfederal defendants; and

(c) The federal defendants authorized the nonfederal defendants to utilize court reporters in the bankruptcy court who did not possess any of the required qualifications.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. *Personal Jurisdiction and Venue*

It is appropriate, as an initial matter, to consider the federal defendants' motions to dismiss for lack of personal jurisdiction and for improper venue. Fed.R.Civ.P. 12(b)(2), 12(b)(3). The federal defendants do not argue that they lack the minimum contacts with the Commonwealth of Pennsylvania that are necessary under the Due Process Clause for this court to assert jurisdiction over them.[2] Rather, they argue that plaintiffs have not properly served them with process and, therefore, have not effected personal jurisdiction over them. *See Driver v. Helms*, 577 F.2d 147, 155 (1st Cir. 1978), *rev'd on other grounds sub nom. Colby v. Driver*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). In this regard, the feder-

---

**2.** Nor could they reasonably advance such an argument. It is apparent that the federal defendants have regular and systematic business contacts with this State, many of which are closely related to the instant action. In short, federal defendants' "conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *But cf. Duplantier v. United States*, 606 F.2d 654, 664–65 (5th Cir. 1979), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981).

al defendants note that they have never been personally served with process, although they do not contest the fact that plaintiffs did serve them by certified mail. They contend, however, that such service is ineffective and that personal service is necessary. We do not agree.

■ Plaintiffs correctly point out that Federal Rule of Civil Procedure 4(e) authorizes extraterritorial service of process in accordance with applicable state rules:

> Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

Plaintiffs argue that the Pennsylvania long arm statute, 42 Pa.C.S.A. § 5322, is therefore applicable, and that it both establishes personal jurisdiction over the federal defendants and authorizes service by certified mail as was done here. *Id.* at §§ 5322, 5323(a)(3).

The critical issue in this regard is whether plaintiffs may legitimately rely on Rule 4(e) and, by virtue thereof, on the Pennsylvania long arm statute.[3] The federal defendants contend that, because of their status as federal officers, service of process upon them may not be effected pursuant to Rule 4(e), but is exclusively governed by Rule 4(d)(5), which provides that service shall be made upon "an officer or agency of the United States, by serving the United States and by delivering a copy of the summons and of the complaint to such officer or agency."[4] We agree that the provisions of Rule 4(d)(5) are mandatory insofar as they require service upon both the United States and the officer or agency named as a

defendant. However, we refuse to hold that Rule 4(d)(5) proscribes the mechanisms for extraterritorial service of process authorized by Rule 4(e). *Cf. DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 at 289, 290 (3rd Cir. 1981). This result, we believe, best preserves the essence of both provisions of the Rule and renders them harmonious rather than contradictory.

Two reasons lead us to this result. First, we note that nothing in the language of Rule 4(e) restricts it to any particular class of defendants. In this sense, Rule 4(e) contrasts with Rule 4(d)(7), which explicitly does not apply to federal officers or agencies. It is, of course, a fundamental principle of construction that we should adhere to the plain language of the Rule and not lightly read into it an exception that could easily have been included by Congress or the Court. *See United States v. Bush*, 647 F.2d 357, 368 (3rd Cir. 1981). Thus, we conclude that state provisions for service of process may be used, pursuant to Rule 4(e), notwithstanding the fact that defendants are federal officers. *See Green v. Carlson*, 581 F.2d 669, 676 (7th Cir. 1978), *aff'd*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Sparrow v. Goodman*, 376 F.Supp. 1268 (W.D.N.C.1974). *Cf. Marsh v. Kitchen*, 480 F.2d 1270 (2nd Cir. 1973). Hence, the service of process in the instant action was proper. For "if the use of state law is appropriate under Rule 4(d)(7) or Rule 4(e) and state law is complied with, service is valid regardless of whether such service is permissible under the specific provisions for service in the first six paragraphs of Rule 4(d)." Wright & Miller, *supra* at § 1115.

A second reason for this result is that, where personal jurisdiction exists in the due process sense, it would not comport with the

---

**3.** Given the broad scope of the Pennsylvania long arm statute, *see* 42 Pa.C.S.A. § 5322(a), and the federal defendants' systematic relations with the Commonwealth, *see* note 2 *supra*, it is clear that, if applicable, the statute would support personal jurisdiction with respect to these defendants. *See Compagnie Des Bauxites De Guinea v. Insurance Co. of N. Am.*, 651 F.2d 877 at 881 (3rd Cir. 1981).

**4.** Rule 4(d)(5) has generally been interpreted to require personal service upon the government officer or agency named in the action. *See Jones v. Middlesex County Bd. of Elections*, 259 F.Supp. 931, 932 (D.N.J.1966); *Robert Hawthorne, Inc. v. United States Dep't of Interior*, 160 F.Supp. 417 (E.D.Pa.1958); *Frost v. Ewing*, 13 F.R.D. 432 (W.D.Pa.1953); Wright & Miller, 4 Fed.Prac. & Proc. § 1107 (1969).

liberal spirit of the Federal Rules to construe them in the restrictive fashion urged by the federal defendants. There is no question but that the federal defendants have received actual notice of this action; nor is there any fundamental unfairness in requiring them to defend in this forum. Moreover, in 28 U.S.C. § 1391 Congress has expressed the policy that federal officers may generally be served by means of certified mail. Although defendants may not be federal officers within the meaning of section 1391,[5] the policy expressed in that statute is not irrelevant to our task of construing Rules 4(d)(5) and 4(e) in a harmonious and reasonable manner. For these two reasons, therefore, we conclude that service was properly effected upon the federal defendants in accord with Rule 4(e) and the Pennsylvania long arm statute, as incorporated therein. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction will be denied.

■ Defendants have also moved to dismiss on the grounds of improper venue. For the reasons indicated in note 5, we will not base venue on 28 U.S.C. § 1391(e). Nonetheless, we conclude that venue properly lies in this district.

Section 1391(b) of Title 28 provides that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district . . . in which the claim arose." The instant action clearly satisfies the first element of this test—jurisdiction of the case is founded on the presence of a federal question, not on diversity of citizenship. Thus, the pivotal question is where the claim arose. The general rule is that "the place where the claim arose is the situs of events important to the case." *Lamont v. Haig*, 590 F.2d 1124, 1133 (D.C.Cir.1978). *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). It is to be "ascertained by adver-

tence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." *Lamont, supra,* 590 F.2d at 1134. *See Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495 (3rd Cir. 1976). There can be little doubt that the significant operative events regarding the instant action center in this district. Admittedly, the federal defendants formulate their policies in the District of Columbia. However, virtually every other event of significance to this action occurred in this judicial district. The bids were solicited here and were unsealed here, and the contract is to be performed here. Thus, viewed in a commonsense manner, the weight of contacts inclines towards this district. *Philadelphia Hous. Auth. v. American Radiator & Standard San. Corp.,* 291 F.Supp. 252, 260 (E.D.Pa.1968). *See Patmore v. Carlson,* 392 F.Supp. 737 (D.Ill. 1975). Accordingly, venue properly lies in this district.

## II. *The Applicable Legal Standards*

As noted above, currently being considered by the court are plaintiffs' motion for a preliminary injunction and defendants' motions for dismissal of the complaint or, in the alternative, for summary judgment. Initially, therefore, we will briefly discuss the standards relevant to such motions.

An application for a preliminary injunction is addressed to the reasoned discretion of the district court. It is generally accepted that four factors are relevant to the decision whether to issue a preliminary injunction: (1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the non-moving party if relief is granted; (3) the likelihood of success on the merits; and (4) the public interest. *See, e. g., Henry v.*

---

**5.** We need not reach the question whether plaintiffs can rely on 28 U.S.C. § 1391(e) to justify service by certified mail upon the federal defendants. There is authority, however, in support of defendants' position that the statute only applies to officers of the Executive

Branch. *See Duplantier v. United States,* 606 F.2d 654 (5th Cir. 1979), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); *Liberation News Service v. Eastland,* 426 F.2d 1379 (2nd Cir. 1970); *Seltzer v. Foley,* 502 F.Supp. 600 (S.D.N.Y.1980) (dictum).

*First Nat'l Bank*, 595 F.2d 291, 302 (5th Cir. 1979), *cert. denied sub nom. Clairborne Hardware Co. v. Henry*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Rennie v. Klein*, 462 F.Supp. 1131, 1142 (D.N.J.1978), *rev'd on other grounds*, 653 F.2d 836 (3rd Cir. 1981); Wright & Miller, 11 Fed.Prac. & Proc. § 2948 (1973). In essence, we must weigh the hardships that are likely to result from the grant or denial of preliminary relief in the light of the movant's likelihood of success on the merits of the litigation. *Id. See E.H.I. of Florida, Inc. v. Insurance Co. of N. Am.*, 652 F.2d 310 at 312–313 (3rd Cir. 1981). To the extent that the balance of hardships weighs heavily in favor of the moving party, as it does here, preliminary relief may be appropriate given a reasonable probability of ultimate success. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979); *Fitzgerald v. Mountain Laurel Racing, Inc.*, 464 F.Supp. 263, 269 (W.D.Pa.), *aff'd*, 607 F.2d 589 (3rd Cir. 1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980).

By contrast, a motion to dismiss the complaint for failure to state a claim, because it involves purely legal issues, is not entrusted to the discretion of the trial court. The standard for granting such a motion is a stringent one. As the Supreme Court held in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 101–102. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Moreover, "because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.

1977). In brief, a motion to dismiss is not designed to resolve factual questions, but merely to test the "legal sufficiency of plaintiff's case." *Id.*

The standard for summary judgment is only slightly less stringent. Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Moreover,

When considering a summary judgment motion, "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt."

*Special Jet Services, Inc. v. Federal Ins. Co.*, 643 F.2d 977, 980 (3rd Cir. 1981), *quoting, Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In brief, summary judgment is not designed to provide an easy method for the resolution of factual issues; rather, it is a means to allow the efficient resolution of cases in which there are no genuine issues of fact. *See Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408 (3rd Cir. 1976).

The issues raised by defendants' motions for dismissal or summary judgment concern the legal sufficiency of plaintiffs' claims. These issues are therefore inseparably intertwined with plaintiffs' likelihood of success on the merits. Accordingly, after briefly discussing the harm likely to be suffered as a result of the grant or denial of a preliminary injunction, we shall consider defendants' arguments for dismissal in the context of assessing the likelihood that plaintiffs will prevail on the merits.

### III. *The Balance of Hardships*

"The moving party on a motion for a preliminary injunction must generally show ... [that he] will be irreparably injured *pendente lite* if relief is not granted." *Punnett v. Carter*, 621 F.2d 578, 582 (3rd Cir. 1980); *see id.* at 586–87. Plaintiffs in this case have adequately demonstrated the imminent threat of irreparable injury if relief is not granted. The essence of their claim is that they are being improperly deprived of their positions as reporters for the bankruptcy court.[6] We are aware that courts have on occasion found that the denial of public employment is insufficient harm to justify the issuance of a preliminary injunction. *See Oburn v. Shapp*, 521 F.2d 142, 150–51 (3rd Cir. 1975). However, "what may constitute irreparable harm in a particular case is, of course, dependent upon the particular circumstances of the case." *Id.* at 151. In the instant action, plaintiffs have been employed as court reporters in the bankruptcy court for a considerable period of time. To remove them from their established careers and force them to seek new employment would constitute irreparable injury, even assuming that they had available a cause of action for damages which would recompense them for any pecuniary loss.[7] Moreover, it is far from clear that plaintiffs would have a damages remedy available to them, even if it were determined that they had been wrongfully deprived of their jobs. Therefore, we conclude that plaintiffs have adequately demonstrated irreparable injury.

By contrast, the issuance of a preliminary injunction would not seriously injure defendants. With respect to both the federal defendants and the nonfederal defendants, the only harm that would be occasioned by the grant of a preliminary injunction would be of a pecuniary nature. A potential injury of this nature can be readily protected against by requiring plaintiffs to post a bond pending the final determination of this matter. *See Ohio Oil Co. v. Conway*, 279 U.S. 813, 815, 49 S.Ct. 256, 257, 73 L.Ed. 972 (1929); *Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F.2d 941 (9th Cir. 1972). Under such circumstances, the balance of hardships clearly weighs in favor of granting preliminary relief.

### IV. *The Likelihood of Success on the Merits*

Given the fact that the balance of hardships inclines in favor of plaintiffs, a preliminary injunction is appropriate if plaintiffs can demonstrate a reasonable probability of success on the merits. *See Punnett, supra*, 621 F.2d at 583; *A.L.K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761 (3rd Cir. 1971). For purposes of analysis, we must distinguish between the two claims asserted by plaintiffs. First, they contend that the bankruptcy court has the exclusive statutory authority to appoint or employ its court reporters and that the Administrative Office has improperly attempted to abrogate that authority. Secondly, they contend that the A.O., even assuming that it had the right to contract for court reporting services, nonetheless improperly utilized competitive bidding procedures and then arbitrarily and capriciously awarded the contract to an unresponsive bidder. With respect to their first theory of relief, plaintiffs have not demonstrated a likelihood of success on the merits; indeed, we agree with defendants that this claim is deficient as a matter of law and should be dismissed. However, with respect to their second claim, plaintiffs have demonstrated a reasonable probability of success on the merits.

---

**6.** The injury that would be suffered by Judge Goldhaber is less weighty but certainly not insignificant. He asserts that the quality of justice dispensed in his court will suffer in the absence of a preliminary injunction. This factor is discussed in the later section dealing with the public interest.

**7.** As Judge Friendly noted in *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2nd Cir.

1970), "the right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms." *Id.* at 1205. *See Saxe v. Brennan*, 416 F.Supp. 892 (E.D.Wis.), *aff'd mem.*, 544 F.2d 521 (7th Cir. 1976). *Cf. Muhammad Ali v. Division of State Athletic Comm'n of N. Y.*, 316 F.Supp. 1246 (S.D.N.Y.1970).

**476**

We explain the reasons for these conclusions below.

### A. The Statutory Claim

■ Initially, plaintiffs argue that Congress has given the bankruptcy court exclusive authority to appoint or employ its court reporters and that the A.O., by soliciting bids for contract reporter services, has illegally attempted to abrogate that authority. In addition, they contend that, even if contract reporters are appropriate, the bankruptcy court retains the authority to designate the reporter(s) who should be awarded the contract. Defendants concede that the bankruptcy court has the authority to appoint its court reporters when appointive positions are available. However, they argue that both Congress and the Judicial Conference have mandated that contract reporters be used in lieu of appointed reporters; and they further contend that the sole authority to contract for such services is vested in the A.O.[8] Thus, we must resolve two questions: first, whether Congress has provided that contract reporters be utilized in lieu of court appointed reporters;[9] and second, whether the A.O. has the authority to negotiate and enter into such contracts. Because we answer both questions in the affirmative, we conclude that plaintiffs have not demonstrated a reasonable probability of success with respect to their statutory claim. Indeed, for the reasons explained below, summary judgment is warranted with respect to that claim.

■ The critical issue in this case is the initial one: whether Congress has provided that contractual reporting services be used in the bankruptcy courts in lieu of full-time court-appointed reporters. Plaintiffs argue that the Bankruptcy Reform Act of 1978 specifically authorized the judges of the bankruptcy court to appoint their court reporters. There is considerable weight to this argument. Section 773(a) of Title 28, which was added by the Bankruptcy Reform Act, provides as follows:

> The bankruptcy court shall require a record to be made, whenever practicable, of all proceedings in cases had in open court. The Judicial Conference shall prescribe that the record be taken by electronic sound recording means, by a court reporter appointed or employed by such bankruptcy court to take a verbatim record by shorthand or mechanical means, or by an employee of such court designated by such court to take such a verbatim record.

The clear implication, but certainly not the direct command,[10] of this provision is that court reporters shall be appointed by the bankruptcy court. This interpretation is supported by section 404(e) of the Bankruptcy Reform Act, which governs during the transition period and provides as follows:

> During the transition period, the United States bankruptcy judges of each district

---

**8.** In addition to meeting the merits of plaintiffs' claims, defendants have moved to dismiss on the bases that plaintiffs lack standing and that there is no private "cause of action" to enforce any rights conferred on them by the Bankruptcy Reform Act, 28 U.S.C. § 773(a). We need not reach these issues with respect to the reporter plaintiffs because we can perceive no way in which the statute confers any substantive rights on them. *See Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). However, the statute was intended to confer substantive rights on the judges of the bankruptcy courts. We think it apparent that these judges must have standing to contest an alleged infringement of their statutory authority to appoint members of their staff. *See Nash v. Califano,* 613 F.2d 10, 16–17 (2nd Cir. 1980). Similarly, we conclude that plaintiff Goldhaber

has a cause of action, either pursuant to 5 U.S.C. § 701 or implied under the Bankruptcy Reform Act, to enjoin an infringement of his statutory authority. If no such cause of action existed, the statute could be disregarded with impunity. The facts that we deal here solely with injunctive relief and that there is no other mechanism to enforce the statute distinguish this situation from the implied cause of action cases cited by defendants.

**9.** If Congress did not so mandate, the A.O. would have no right to limit the authority of the bankruptcy court to appoint its court reporters. 28 U.S.C. § 609.

**10.** *Cf.* 28 U.S.C. § 771(a) ("Based on need each bankruptcy court may appoint a clerk who shall be subject to removal only by the court"); 28 U.S.C. § 772.

may appoint employees ... and court reporters the same as judges of a United States bankruptcy court established under section 201 of this Act may appoint such ... employees.

Pub.L.No.95–598, title IV, § 404(e), 92 Stat. 2549, 2684(e) (1978). Moreover, the legislative history of the Bankruptcy Reform Act appears to support plaintiffs' argument that Congress granted bankruptcy judges authority to appoint reporters equivalent to the authority of district court judges to appoint their own court reporters: "The Bill assures similar treatment by the Administrative Office of the U. S. courts concerning administrative personnel in bankruptcy courts and personnel serving in the U. S. district courts." [11]

Nonetheless, it is clear that section 773(a) is not phrased in the same direct language as section 753, which provides that "[e]ach district court of the United States ... shall appoint one or more court reporters." 28 U.S.C. § 753(a). *See also* 28 U.S.C. §§ 771(a), 772. Perhaps the most fundamental distinction between the two statutes is that section 773(a) expressly grants the Judicial Conference broad authority to prescribe the means by which a record will be made of bankruptcy court proceedings. In accord with that authority, in 1979 the Judicial Conference adopted a resolution providing, *inter alia*,

(3) that when the volume of business [in the bankruptcy court] does not warrant the services of a full-time court reporter, contract reporters be used. The Confer-

ence directed the Administrative Office not to authorize full-time court reporters until the need for their services is fully justified, and further directed that, until such need is established, contract reporters be authorized.

Report of the Proceedings of the Judicial Conference of the United States for Calendar Year 1979 at 34.

In directing the A.O. "not to authorize full-time court reporters until the need for their services is fully justified," the Judicial Conference clearly acted within the authority conferred upon it by Congress and did not abrogate the authority of the bankruptcy courts. This conclusion is not only supported by the language and legislative history of the Bankruptcy Reform Act, but has been confirmed by subsequent legislative developments. In the Judicial Appropriations Act of 1980 ("JAA"), Congress appropriated $58,500,000.00 for "salaries and expenses of judges and other officers and employees of the bankruptcy courts." Act of 1980, Pub.L.No.96–68, title IV, 93 Stat. 416, 429 (1979). Both the Senate and House reports accompanying the bill indicate that the request for 215 full-time court reporters was denied and that the appropriation was intended to provide for contract reporting services.[12] Subsequently, the House Report accompanying the 1981 appropriations bill expressly left the choice between contract and appointed court reporters to "the discretion of the Judicial Conference of the U.S., subject to the determination that the

---

11. Statement by the Hon. Dennis DeConcini, 124 Cong.Rec. S 17406 (Oct. 6, 1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 6505, 6553. *See* Senate Report No. 989, 95th Cong., 2d Sess. (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5934–35; *see also* 28 U.S.C. § 775; 1 Collier on Bankruptcy 2–5 (15th ed. 1980).

12. Senate Report No. 251, 96th Cong., 1st Sess. (1979); House Report No. 247, 96th Cong., 1st Sess. (1979). The A.O. argues that, given the fact that Congress appears to have appropriated funds exclusively for contractual reporting services, the appointment of court reporters is proscribed by the Anti-Deficiency Act, 31 U.S.C. § 665. This argument places too great emphasis on the scanty legislative history of

the JAA and ignores common sense. In its 1979 resolution, the Judicial Conference authorized the appointment of full-time court reporters if "the need for their services is fully justified." Certainly, implicit in that is the idea that appointments may only be made where full-time salaried reporters would be cost-effective. With this limitation in mind, the JAA and Anti-Deficiency Act cannot reasonably be read to proscribe, under all circumstances, the appointment of full-time reporters. Where such an appointment would be cost-effective, it would not offend either the JAA or the Anti-Deficiency Act. This position was, of course, expressly adopted by the House Committee considering the 1981 appropriations bill. *See* House Report No. 1091, 96th Cong.2d Sess. (1980), at 40.

appointment of full-time salaried reporters in multi-judge courts will be fully utilized and cost effective." House Report No. 1091, 96th Cong., 2d Sess. (1980), at 40. *See* Proceedings of the Judicial Conference 74 (Sept. 1980).

Thus, the Judicial Conference acted within its authority in mandating that contract reporters be used until the need for full-time reporters is "fully justified." Plaintiffs have introduced no evidence which would indicate that full-time reporters are warranted in the Eastern District of Pennsylvania Bankruptcy Court.[13] Indeed, they have conceded that they have not even attempted to make such a showing to the A.O. Under these circumstances, the A.O. was justified in deciding to utilize contract reporting services in that court.

█ Having decided that the A.O. acted properly in deciding that contract reporters should be used, we reach the second issue raised by plaintiffs' statutory claim: whether, even if contract services are appropriate, the choice of the reporter should remain with the bankruptcy court. Plaintiffs argue that the decision to use contract reporters does not divest the bankruptcy court of its statutory authority, pursuant to 28 U.S.C. § 773(a), to appoint or employ the particular reporter. In this regard, plaintiffs emphasize that the 1979 Judicial Conference resolution merely empowered the A.O. to *authorize* the use of contract reporters, not to let the contract or designate the reporter. The latter authority, they contend, remains vested in the bankruptcy court. This argument, although thoughtfully conceived and well argued, is ultimately unpersuasive.

Plaintiffs' argument ignores the critical distinction between the power to appoint, which is vested in the bankruptcy court, and the power to contract, which is vested in the A.O. Appoint is a term of art. It refers to the creation of an employer-employee relationship between the Government and an individual selected to become a servant of the Government. *See* 5 U.S.C. §§ 2101(a), 2104, 2105; *Lodge 1858, American Fed'n of Gov't Employees v. Webb*, 580 F.2d 496 (D.C.Cir.), *cert. denied*, 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978). It is this power that is vested in the bankruptcy court pursuant to 28 U.S.C. § 773(a). However, the authority to appoint employees is not the equivalent of the authority to contract for services. *Id.* at 505–06. The sole authority to contract for services on behalf of the judicial branch is vested in the A.O. *See* 28 U.S.C. § 604(a)(10); *see also* 28 U.S.C. § 753(g). Thus, once it was determined that full-time reporters were not necessary in the bankruptcy court and that contract reporting services would be used instead, it was the responsibility of the A.O. to enter into an appropriate contract. In doing so, the A.O. did not usurp the authority of the bankruptcy court to appoint its reporters, but simply acted in accord with its statutory mandate as the contracting agent of the judicial branch.

For the reasons indicated above, summary judgment is warranted with respect to plaintiffs' statutory claims. Arguably, the A.O.'s decision to use contractual reporting services in lieu of court-appointed reporters in the eastern district bankruptcy court might be reviewable for an abuse of discretion. We need not reach this question, however. The plaintiffs have conceded that they never attempted to demonstrate to the A.O. that full-time appointed reporters were warranted. Under these circumstances, the A.O. was compelled to follow the

---

13. Plaintiffs do argue, however, that the solicitation for bids issued by the A.O. evidences the need for full-time reporters. They note in this regard that the solicitation provides that the "Principal Period of Service, during which the Contractor must provide Reporters under any Agreement resulting from this solicitation, will be from 8 A.M. through 5:30 P.M., Monday through Friday, excluding Federal holidays." However, the solicitation makes clear that this provision merely defines the time frame during which services might have to be rendered. Nowhere is there any indication that services will have to be provided continuously during that period. Thus, the same bid solicitation states that data are not available with respect to "the estimated requirements for services within the scope of any Agreement resulting from this solicitation."

direction of the Judicial Conference that full-time reporters not be authorized "until the need for their services is fully justified." And, as indicated above, once the A.O. decided to use contractual reporting services, it was the duty of that office to enter into an appropriate contract. Accordingly, summary judgment shall be granted with respect to plaintiffs' claims founded on 28 U.S.C. § 773(a).

## B. *The Bid Procedures Claim*

Plaintiffs also contest the A.O.'s decision to utilize competitive bidding procedures in letting the bankruptcy court reporting contract and its award of that contract to defendants Abovitz & Nitchie. For the reasons indicated below, we conclude that the A.O. appropriately used competitive bidding procedures in letting the contract. However, we do find that plaintiffs have demonstrated a reasonable probability of success on the merits of their claim that the A.O. acted arbitrarily and capriciously in awarding the contract to defendants Abovitz & Nitchie.

■ Initially, we reject plaintiffs' claim that the A.O. acted improperly in using competitive bidding procedures to let the bankruptcy court reporting contract. In reaching this conclusion, we do not decide whether the A.O. was compelled to use competitive bidding, pursuant to 41 U.S.C. § 5, but merely that it acted within its authority in using such procedures.[14] The Director of the A.O. is authorized by statute to "enter into and perform contracts and other trans-

actions upon such terms as the Director may deem appropriate as may be necessary to the conduct of the work of the judicial branch of Government." 28 U.S.C. § 604(a)(10)(C). It was surely within the Director's statutory authority to determine, as he did in this instance, that the use of competitive bidding was appropriate. *See* 10 U.S.C. § 2304(a). *Cf.* 28 U.S.C. § 753(g).

■ Plaintiffs' final contention is that the A.O. acted arbitrarily and capriciously in awarding the bankruptcy court reporting contract to defendants Abovitz & Nitchie. In contrast with their other claims, plaintiffs have shown a reasonable probability of success on the merits of this claim. The facts adduced at the hearing of this matter indicated that defendants Abovitz & Nitchie were not responsive bidders within any reasonable interpretation of the applicable specifications. Neither the nonfederal defendants nor their employees meet the specified qualifications, which require that "[e]ach reporter shall possess at least four (4) years of prime court reporting experience, or four (4) years of reporting experience of at least equal difficulty ... [or] a certificate of merit from the National Shorthand Reporters Association," or comparable certification from another organization. Complaint, Exhibit E at No. 5. Thus, we need not reach the question whether the A.O. should have awarded the contract to plaintiffs, notwithstanding their higher bid, because of their greater experience and qualifications. The simple fact is that Abovitz & Nitchie were not responsive bidders.

---

14. Plaintiffs argue that they fall within the personal services exception of 41 U.S.C. § 5(4). That may well be true. *But see* 25 Comp.Gen. 914 (1946); 6 Comp.Gen. 295 (1926). However, the statutory exception for personal service contracts does not require the Government to eschew competitive bidding in such situations; it merely allows the Government that option. In brief, the personal services exception confers no right upon those seeking Government contracts to demand that competitive bidding not be used. *See Friend v. Lee,* 221 F.2d 96 (D.C.Cir.1955); *Walter P. Villere Co. v. Blinn,* 156 F.2d 914 (5th Cir. 1946); *United States ex rel. Brookfield Constr. Co., Inc. v. Stewart,* 234 F.Supp. 94 (D.D.C.), *aff'd,* 339 F.2d 753 (D.C.Cir. 1964).

Plaintiffs also argue that the grant of authority to the bankruptcy court to appoint its court reporters, 28 U.S.C. § 773(a), brings the instant situation within the exception to competitive bidding for circumstances where the mode of contracting is "otherwise provided in ... other law." 41 U.S.C. § 5. However, as explained above, contracting for reporting services is distinct from, indeed incompatible with, the exercise of the appointment power conferred in section 773(a). Thus, once the A.O. legitimately decided to contract for reporting services, rather than authorize the bankruptcy court to appoint a reporter, the provisions of section 773(a) became irrelevant.

In awarding the contract to them, the A.O. acted arbitrarily, capriciously, and in dereliction of its own contract specifications.

■ Defendants argue, however, that the plaintiffs lack standing to challenge the A.O.'s acceptance of Abovitz & Nitchie's bid. We do not find that argument persuasive. For plaintiffs to have standing, they must meet three requirements; they must demonstrate (1) injury in fact, (2) that arbitrary or capricious actions injured an interest of theirs arguably within the zone of interests protected or regulated by the statute in question, and (3) that Congress has not precluded judicial review. *See Control Data Corp. v. Baldridge*, No. 80–1143, slip op. at 11 (D.C.Cir. March 25, 1981); *Local 2855, AFGE (AFL–CIO) v. United States*, 602 F.2d 574 (3rd Cir. 1979); *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29 (3rd Cir. 1976). We think it obvious that, for the reasons enumerated earlier in the balance of hardships section, plaintiffs meet the injury in fact test. *See generally Americans United for Separation of Church and State, Inc. v. United States Dep't of HEW*, 619 F.2d 252 (3rd Cir. 1980). Defendants do not contest this. They do argue, however, that plaintiffs have not established the second requirement of the standing test—the invasion of a legal interest. In this regard, defendants rely on *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), which held that unsuccessful bidders do not have standing to contest the precontract actions of government officials. *Id.* at 125, 60 S.Ct. at 875.

The validity of *Perkins*, however, has been undercut by subsequent statutory and doctrinal developments. In *Merriam v. Kunzig*, 476 F.2d 1233 (3rd Cir.), *cert. denied sub nom. Gateway Center Corp. v. Merriam*, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973), the Third Circuit, after surveying those developments, held that an "unsuccessful bidder does have standing to seek judicial review of a government contract award." *Id.* at 1240.[15] We have no reluctance in relying on *Merriam* to find that plaintiffs do have standing to contest the award of the contract to Abovitz & Nitchie. In this regard, we note that the facts of this case are compellingly similar to those present in *Merriam*; here, as in that case, the aggrieved persons are not merely hopeful bidders but individuals who have had an extended relationship with the Government, a relationship which would be terminated by the contract award.

Further, we are not persuaded by defendants' attempt to distinguish *Merriam*. Defendants contend that the holding in *Merriam* was predicated on the Administrative Procedure Act ("APA"), which, they contend, does not apply to the A.O. We reject both aspects of this argument. First, a reasonable reading of *Merriam* reveals that it was by no means exclusively predicated on the APA. In fact, the court of appeals found that the zone of interest test was satisfied in three distinct respects, *see id.* at 1241–43, each of which would appear to be applicable here, and none of which directly implicated the APA. Secondly, defendants have not convinced us, *see Concerned Residents, supra*, 537 F.2d at 34, that the A.O. is exempt from the judicial review provisions of the APA. *But see Seltzer v. Foley*, 502 F.Supp. 600, 602 n.2 (S.D.N.Y.1980). To be sure, the APA does specifically exempt "the courts of the United States." 5 U.S.C. § 701(b)(1)(B). However, although the A.O. is certainly an arm of the courts, as defendants contend, we are not convinced that it comes within the above exception to the APA. We deem it significant, in this regard, that the functions of the A.O. are much more akin to those of an administrative or executive agency than to those of the courts. In addition, Congress has, in other statutes, recognized an exception for the "judicial branch." *See, e. g.*, 5 U.S.C. §§ 5102(a)(1)(B), 5521(1)(B), 5701(1)(D). The A.O.'s argument would render the dis-

15. *See Control Data, supra; Spencer, White & Prentis, Inc. v. United States*, 641 F.2d 1061 (2nd Cir. 1981); *Keco Inds., Inc. v. United States*, 428 F.2d 1233, 192 Ct.Cl. 773 (1970); *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970); *Budike v. Klutznick*, 510 F.Supp. 970 (E.D.Pa.1981).

tinction between the courts and the judicial branch meaningless. In light of this, we cannot conclude that Congress intended to exclude the A.O. from the extraordinarily broad ambit of the APA. *See* 5 U.S.C. § 701(b)(1); *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).[16]

Finally, to the extent that defendants argue that the A.O. is an arm of the courts, their reliance on *Perkins* becomes more questionable. The Court's holding in *Perkins* was, in large measure, based on separation of powers considerations. 310 U.S. at 127–28, 60 S.Ct. at 876–77. As the *Merriam* court explained: "Whatever justification there may be for imposing, in addition to the case or controversy requirements of Article III, a zone of interest requirement for standing to seek judicial review of agency action, must be found in some notion of separation of powers." 476 F.2d at 1243. Such considerations are, of course, irrelevant with respect to judicial review of actions undertaken by the judicial branch. That is not to say that the courts should intrude into the A.O.'s affairs. Certainly, its decisions are entitled to a large measure of respect and should not be reviewed except for an abuse of discretion. These concerns, however, are distinct from the question of standing. *See id.* For the reasons enunciated above, we find *Merriam* controlling and we conclude that plaintiffs have standing to contest the award of the contract to Abovitz & Nitchie.[17]

 Finally, defendants maintain that plaintiffs are barred from relief by the doctrine of sovereign immunity. *See Schnapper v. Foley*, 471 F.Supp. 426, 427 (D.D.C. 1979). *But see, Seltzer, supra*, 502 F.Supp. at 601. Of course, if the A.O. is governed by the judicial review provisions of the APA, then the waiver of sovereign immunity found in that statute, 5 U.S.C. § 702, would apply. Moreover, even if the APA is inapplicable, it is generally recognized that "[s]overeign immunity is not a bar if the public official is acting in excess of his authority." *Neal v. Secretary of the Navy*, 472 F.Supp. 763, 770 (E.D.Pa.1979), *rev'd on other grounds*, 639 F.2d 1029 (3rd Cir. 1981). *See Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Williams v. Wood*, 612 F.2d 982 (5th Cir. 1980). The A.O. has no authority to award contracts to bidders that are not responsive to the solicitation. *See Merriam, supra*, 476 F.2d at 1243–44. Because we have found that the A.O. acted beyond its authority in accepting an unresponsive bid, sovereign immunity should not bar an injunctive action brought to redress that unlawful act.

Moreover, as an arm of the judiciary, the A.O. should be accountable to the judiciary when it abuses its discretion. Of course, the policies of the A.O. are overseen by the Judicial Conference. Hence, questions of that nature may not be appropriate for review by the district courts. But the administration of those policies is not, indeed cannot be, effectively overseen by the Judicial Conference. Certainly, as indicated above, the A.O. should be accorded broad discretion in its daily functioning, but when the office acts in an arbitrary and capricious manner, meaningful review should be

---

16. The parties have not briefed, and we therefore do not reach at this time, the question whether plaintiffs should have exhausted administrative remedies before bringing this action.

17. Defendants do not argue that Congress has precluded judicial review of the A.O.'s award of contracts. Because defendants bear the burden of proof on that question, *see Concerned Residents, supra*, 537 F.2d at 34, their failure to raise the issue mandates that we resolve it in favor of plaintiffs. Moreover, we do not think defendants would prevail on this issue. Although it could be argued that 28 U.S.C. § 604(a)(10)(C) precludes judicial review of the

A.O.'s contracting decisions, that is far from clear. *Cf.* 28 U.S.C. § 1407(e). In addition, it is generally accepted that "if there is an abuse of discretion, then the agency's action, even if it is action committed to the agency's discretion by law, is reviewable." Mezines, Stein & Gruff, 5 Administrative Law § 44.01. *See Ajay Nutrition Foods, Inc. v. FDA*, 378 F.Supp. 210 (D.N. J.1974), *aff'd*, 513 F.2d 625 (3rd Cir. 1975). As noted above, we have found that the A.O. acted arbitrarily and capriciously in awarding the court reporting contract to Abovitz & Nitchie. Therefore, that decision is not insulated from review.

available. In brief, the judiciary has a vital interest in keeping its own house in order, which can only be accomplished if judicial review of the A.O.'s actions is available when necessary.

Thus, we conclude that sovereign immunity does not bar this action. For the reasons explicated above, we find that plaintiffs have demonstrated a reasonable probability of success on the merits of their claim that the A.O. awarded the contract to an unresponsive bidder.

## V. *The Public Interest*

 The final factor of the preliminary injunction calculus is the public interest. Consideration of this factor, in conjunction with the matters discussed above, convinces us that preliminary injunctive relief is warranted.

The role of the court reporter in the administration of justice is a critical one. It is important for all concerned—litigants, members of the bar, and the courts—that reporters be both competent and dedicated. In the instant matter, the A.O. awarded the bankruptcy court reporting contract to persons who did not meet its own, not unduly demanding, contract specifications. Certainly, the Government has a strong interest, particularly in this budget conscious era, in minimizing its expenditures. However, that interest can be adequately protected by allowing the A.O. to substitute part-time contract reporters for full-time salaried reporters. The interest in cutting costs does not extend to the award of Government contracts to unqualified bidders. In brief, the quality of justice is well worth the modest costs that may be entailed by the grant of preliminary relief.

Our discussion of plaintiffs' likelihood of success on the merits indicates that it would not be appropriate to enjoin the A.O. from letting a contract for court reporting services for the eastern district bankruptcy court. Rather, although preliminary relief is warranted, it must be more narrowly tailored. Thus, we shall merely enjoin the A.O. from awarding the contract to defendants Abovitz & Nitchie or to other unresponsive bidders. This shall not preclude the A.O. from awarding the contract to the lowest responsive bidder or from conducting a new solicitation for bids. Such relief, we conclude, best protects the public interests at stake and best conforms to plaintiffs' likelihood of success on the merits.

## VI. *Conclusion*

It is, perhaps, not inappropriate to conclude with some personal remarks. By virtue of my experience on the district court, I am well aware of the value of a court reporter who is not only competent but also loyal and accountable to the court. As bankruptcy judges continue to face growing responsibilities, they will inevitably rely more and more on their court reporters. This is not to say that full-time reporters should be appointed where such positions are not warranted. However, I do hope that the A.O., in its commendable zeal to guard the public fisc, will not sacrifice the needs of an effective system of justice. Some consideration should therefore be given to pursuing the goal of cost efficiency in the manner that will minimally interfere with the ability of the bankruptcy judges to maintain some control over the selection of their staff.[18] Only if the judges have that authority will they be able to insist that the reporters make sacrifices, when necessary, to accommodate the needs of the court.

18. Thus, the A.O. might consider authorizing one full-time position for the two bankruptcy judges sitting in Philadelphia. Alternatively, the A.O. might insist on contract reporters, but set a reasonable rate for the services and allow the judges to choose the reporter. The A.O. argues that it is mandated by law to use competitive bidding in letting such contracts. Without deciding this issue, I merely note that the A.O. might investigate the extent of its discretion in this regard. With respect to every issue in this matter, the A.O. contends either that it has absolute, unreviewable discretion or that it has no discretion and is compelled by law to act in a certain manner. It is difficult to believe that there is no middle ground with respect to at least a few of these questions. If the A.O. decides that it does have the discretion not to use competitive bidding in letting these contracts, it should consider some other approach.

Nevertheless, I have concluded that the bankruptcy court has neither an unfettered right to appoint its court reporters nor a right to designate those reporters with whom the A.O. should contract. However, both the courts and those bidding for contracts have a right to insist that the A.O. act responsibly in awarding contracts. In the instant case, the evidence at hand indicates that the A.O. acted in disregard of its own bid specifications. Accordingly, preliminary injunctive relief is warranted, enjoining the A.O. *pendente lite* from awarding the contract at issue here to defendants Abovitz & Nitchie or other unresponsive bidders. In summary, we conclude as follows:

1. This court has subject matter jurisdiction of this action.

2. This court has in personam jurisdiction over the federal defendants under the Pennsylvania Long-Arm Statute, 42 Pa. C.S.A. § 5322, which is applicable here pursuant to Federal Rule of Civil Procedure 4(e).

3. Extraterritorial service of process under a state long-arm statute, as authorized by Fed.R.Civ.P. 4(e), is effective with respect to federal officials.

4. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) since the plaintiffs' claim arose in this district.

5. Plaintiffs have standing to maintain this action.

6. This action is not barred by sovereign immunity.

7. The Director of the Administrative Office properly refused to authorize the appointment of full-time court reporters for the Eastern District of Pennsylvania Bankruptcy Court and properly determined that contract reporters should be used instead.

8. The Director of the Administrative Office is exclusively authorized to award contracts for court reporting services in the United States Bankruptcy Courts pursuant to 28 U.S.C. § 604(a)(10).

9. In awarding a contract for reporting services in the bankruptcy court, the Administrative Office did not usurp the authority of that court.

10. The Director of the Administrative Office acted within his authority in using competitive bidding to award the contract at issue here.

11. In awarding the bankruptcy court reporting contract to defendants Abovitz & Nitchie, the Director of the Administrative Office acted arbitrarily, capriciously, and beyond his statutory authority in that the bid submitted by Abovitz & Nitchie was not responsive to the solicitation.

12. The award of the contract to defendants Abovitz & Nitchie is properly enjoined *pendente lite*.

### ORDER

This matter having been brought before the court on the 3rd day of April, 1981; and

The court having considered the briefs, testimony, exhibits and oral argument of counsel; and

For the reasons stated in the court's opinion filed this date,

It is on this 16th day of July, 1981, hereby ORDERED that the motion of plaintiffs for a preliminary injunction is granted in part. The Director of the Administrative Office and his delegates are enjoined *pendente lite* from awarding a contract for court reporting services for the United States Bankruptcy Court for the Eastern District of Pennsylvania to defendants Abovitz & Nitchie or any other bidders not responsive to the applicable solicitation for bids.

The reporter plaintiffs shall post a bond in the amount of $1,000.00 pending the determination of this matter.

It is FURTHER ORDERED that defendants' motion for summary judgment is granted in part, as all claims asserting a violation of plaintiffs' rights under the Bankruptcy Reform Act are hereby dismissed.

In all other respects, defendants' motions to dismiss or for summary judgment are denied.

No costs.