See also 519 F.Supp. 466.

**Emil F. GOLDHABER, Martin Katz d/b/a Atlas Reporting Service, and Helen Mattis**

v.

**William E. FOLEY, Edward Garabedian, Donald Seay, Paul R. Tuell, and Rhoda Abovitz and Sally Nitchie d/b/a Abovitz & Nitchie, Appellees.**

**Appeal of Martin A. KATZ and Helen Mattis.**

**No. 82–1254.**

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1982.

Decided Jan. 17, 1983.

Edward I. Swichar (argued), David L. Braverman, Wexler, Weisman, Forman & Shapiro, P.C., Philadelphia, Pa., for appellants.

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Virginia R. Powel, Asst. U.S. Atty. (argued), Philadelphia, Pa., for appellees.

Before HUNTER and GARTH, Circuit Judges, and WEBER,* District Judge.

* Honorable Gerald J. Weber, United States District Judge for the Western District of Pennsyl-    vania, sitting by designation.

OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal requires that we determine whether the phrase "unless ... the position of the United States was substantially justified" in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980), requires that a plaintiff be denied attorneys' fees when, in an action against the United States, the United States succeeds in its defense against one of plaintiff's claims, but does not prevail in its defense against the second of plaintiff's claims.

Because we conclude that the substantial justification of the United States in defending against one of plaintiff's claims does not render the position of the United States "substantially justified" when a litigant obtains the desired relief under a second claim, we reverse.

I.

Appellants Katz and Mattis [hereinafter Katz] are reporters for the bankruptcy court for the Eastern District of Pennsylvania. They[1] initiated this action against William Foley, Director of the Administrative Office of the United States Courts ("A.O."), and two other court reporters, Abovitz and Nitchie, seeking an injunction restraining the A.O. from engaging Abovitz and Nitchie as reporters for the bankruptcy court. Katz advanced two theories in support of an injunction. He maintained (1)

that Congress vested the authority to hire bankruptcy court reporters in the bankruptcy courts, not in the A.O., and (2) that the A.O. acted arbitrarily, capriciously, and in disregard of its own bid specifications in hiring Abovitz and Nitchie.

The district court rejected Katz's "authority" claim, but approved of Katz's second claim, finding that Abovitz and Nitchie "fail[ed] to meet any of the three standards set forth in ... the bid solicitation under Item 5, Qualifications of Reporters." *Goldhaber v. Foley*, 519 F.Supp. 466, 471 (E.D.Pa.1981).[2] Accordingly, the district court preliminarily enjoined the A.O. from awarding a contract for court reporting services to Abovitz, Nitchie, or any other bidder that did not qualify under the bid solicitation. Shortly thereafter the bid solicitation expired, and Katz and the A.O. stipulated that the action should be dismissed as moot. Katz has remained in his position as a court reporter for the bankruptcy court.

Katz then sought attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412 (Supp. IV 1980). Section (d)(1)(A) of the Act provides that the court "shall award to a prevailing party other than the United States" fees and expenses, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[3] Katz contended

---

**1.** The appellants inform us that the Honorable Emil F. Goldhaber, United States Bankruptcy Judge, was also a plaintiff in the action below. Judge Goldhaber did not apply for attorneys' fees and costs and is not a party to this appeal. Appellants' Brief, at 3.

**2.** The district court found that the nonfederal defendants [Abovitz and Nitchie] met none of the terms and conditions of the bid solicitation pertaining to qualifications. The A.O.'s bid solicitation provided that "[e]ach Reporter shall possess at least four (4) years of prime court reporting experience, or four years of experience reporting proceedings of at least equal difficulty." A reporter with less than four years of "prime court reporting experience" could nevertheless qualify by presenting a "certificate of merit" from the National Shorthand Reporters Association (NSRA) or its equivalent. The district court found that the phrase

"prime court reporting experience" means "recording and transcribing courtroom proceedings," a more difficult task, the district court concluded, than transcribing pretrial depositions, arbitrations, conferences, hearings, and shareholders' meetings. 519 F.Supp. at 470–71. Neither Abovitz nor Nitchie had a certificate of merit from the NSRA or its equivalent. Because Abovitz and Nitchie had experience transcribing only depositions, arbitrations, conferences, and hearings, the district court found that neither Abovitz nor Nitchie was a qualified candidate under the terms of the bid solicitation. *Id.* at 479–80.

**3.** Section 2412(d)(1)(A) of the Act provides: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to [section 2412(a)], in-

that he was the "prevailing party" within the meaning of the Act and that the A.O. was not "substantially justified" in litigating the action. The government lacked substantial justification, Katz reasoned, because, on three occasions prior to the initiation of the action, the A.O. had been advised that Abovitz and Nitchie were unqualified to serve as bankruptcy court reporters. Katz argued that because the government "had notice that it was acting arbitrarily and capriciously" prior to the institution of the action, the A.O. was unjustified in defending the suit.

In an opinion delivered from the bench on March 19, 1982, the district court disposed summarily of Katz's contention that the government acted without "substantial justification" because the A.O. had been notified before trial that Abovitz and Nitchie were unqualified as reporters. "It is the government's reasonableness as a litigant that we must assess," the district court concluded, "not whether the [government's] prior actions which gave rise to the case were unreasonable." App. at 142.

The district court did not decide whether Katz was a "prevailing party" or whether the government was "substantially justified" in defending against Katz's claim that the A.O. acted arbitrarily and capriciously in hiring Abovitz and Nitchie because they did not qualify under the bid specifications. Rather, the district court concluded, the A.O. was plainly justified in defending against the first claim advanced by Katz: that Congress vested the authority to hire bankruptcy court reporters in the bankruptcy courts, not in the A.O. Because the government was substantially justified in defending against Katz's threshold claim of "no authority," the district court reasoned that the government was substantially justified in defending the entire action. The court reasoned that:

the mere fact that the government lost on this one issue does not mean that their position in the entire case was not substantially justified. We believe the Act contemplates a view of the entire proceedings, not an issue-by-issue analysis. The government need not produce a flawless case. Congress' choice of the word "substantially" indicates that there is some room for error. Taken as a whole, it is our view that the government was "substantially justified" in taking the position it did in this matter.

App. at 144.

On March 26, 1982, the district court entered an order denying Katz's application for attorneys' fees and expenses. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291 (1976).

## II.

Congress intended that the Equal Access to Justice Act remove an obstacle to contesting unreasonable governmental action through litigation. The House Report accompanying the Act finds that certain parties may be deterred from challenging governmental conduct because of the expense involved in vindicating their rights. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5, 9, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984, 4988 [hereinafter House Report]. Accordingly, the Act provides for an award of attorneys' fees and expenses to parties prevailing against the United States.

Section 2412(b) of the Act permits an assessment of fees and expenses against the United States to the same extent that a private party would be liable. 28 U.S.C. 2412(b) (Supp. IV 1980). The decision to award fees under section 2412(b) rests with the discretion of the district court. *See* House Report, *supra,* at 9, 17, 1980 U.S. Code Cong. & Ad.News at 4987, 4996. Section 2412(d), in contrast, directs that the district courts "shall award" fees and expenses to a prevailing party unless the court finds that the position of the United

---

curred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court

finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

States was "substantially justified." 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980).

This appeal raises two issues regarding the meaning of the phrase "the position of the United States" in section 2412(d). Katz argues first that the words "the position of the United States" refer to the conduct of the government *before* his complaint was filed as well as its position on his claims *after* the action began. The government's pre-complaint conduct, Katz argues, was unreasonable, and therefore not "substantially justified" within the meaning of the Act. Second, Katz contends that the position of the United States on the issue on which Katz succeeded was not "substantially justified." Consequently, Katz concludes that even though the government may have been "substantially justified" in defending against his "no authority" claim, the government was not "substantially justified" in defending against his claim that the A.O. had engaged in arbitrary conduct in disregard of the A.O.'s own bid specifications. Thus, Katz argues that a finding of substantial justification in defending against one claim cannot be regarded as substantial justification for defending the entire action. We address each argument in turn.

## A.

Katz's argument that the government's position in opposing Katz's claims should have been evaluated at a time *prior* to the filing of his complaint, rather than in a post-complaint context, need not detain us. At all times the government's position in this controversy has been the same. The A.O. maintained both before Katz started this action and during trial that authority for hiring bankruptcy court reporters rested with the A.O. and that "prime court reporting experience" as required by the bid specifications included stenographic reproductions of depositions, arbitrations, hearings, and so forth. In light of this circumstance, we are hard-pressed to understand the sig-

nificance which Katz attaches to the pre-complaint conduct of the A.O. as contrasted with the A.O.'s post-complaint position.[4]

We are aware of the differing decisions in the district courts as to whether the government's position must be assessed at a pre-complaint or post-complaint stage. *Compare Operating Engineers Local Union No. 3 v. Bohn,* 541 F.Supp. 486, 493 (D.Utah 1982) (only post-complaint position relevant); *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228–29 (D.Md.1981) (same), *with Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C. 1982) (pre-complaint conduct relevant). One court of appeals has also dealt with this subject, holding that it was the position of the United States which it took before the Claims Court, and not its position during earlier administrative proceedings, that was relevant. *See Broad Ave. Laundry and Tailoring v. United States,* 693 F.2d 1387 at 1390–92 (Fed.Cir.1982). Nevertheless, in light of the fact that the record here discloses no difference in the position of the government before or after the filing of the complaint, we do not find it necessary to resolve this question.

Accordingly, on the record of this appeal, we turn to the more significant argument advanced by Katz that the government was not substantially justified in defending against Katz's claim of arbitrary and capricious implementation of the bid specifications.

## B.

The Act and its legislative history are silent on this question. The Act speaks only of "the position" of the United States. Nor is the legislative history helpful; the most that can be gleaned from the reports of the House Judiciary and Conference Committees is that the government's "case" must have "a reasonable basis both in law and fact." House Report, *supra,* at 10, 1980 U.S.Code Cong. & Ad.News at 4989; *see also* H.R.Con.Rep. No. 1434, 96th Cong., 2d

---

**4.** *See Operating Engineers Local Union No. 3 v. Bohn,* 541 F.Supp. 486, 493 (D.Utah 1982) (evaluation of substantial justification as be-

tween pre-complaint and post-complaint conduct becomes important if and when the government changes its position).

Sess. 22, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 5011. Those references to "position" and "case," not being directed to the problem we face here, are of little assistance in determining what is embraced within a finding of "substantial justification" when two or more independently dispositive claims are asserted by a plaintiff. It is apparent to us that neither the Act by its terms nor its legislative history appears to contemplate multiple positions of the government.

Looking, therefore, to the underlying purpose of the Equal Access to Justice Act, we believe that this purpose requires that the words "the position of the United States" must be understood to refer to the government's defense against each of the plaintiff's claims presented before the trial court. In so holding, we are guided by the Act's governing principle that the United States should pay those expenses which are incurred when the government presses unreasonable positions during litigation. This principle devolves from the Act's central purpose to eliminate any barrier to litigation challenging unreasonable government conduct presented by the specter of attorneys' fees.

We would find it incongruous to deny fees to a prevailing party who identifies and defeats one unreasonable government position simply because the government has substantial justification for defending a second claim in the same action. If fees were denied to a prevailing party in such a circumstance, the purpose of the Act would be thwarted: the prevailing party who had succeeded in obtaining in substantial part all the relief sought in his complaint (as Katz has here), would be obliged to bear the entire burden of his attorneys' fees. The

purpose of the Act, however, is to charge to the United States the expenses incurred by a prevailing party who has challenged an unreasonable position taken by the United States. Consequently, any decision requiring that all litigation expenses be borne by the prevailing party, even if the United States has prevailed in one aspect of the action, would undermine a central purpose of the Act.

Conversely, it would be anomalous to charge the entire expense of litigation to the government in such a circumstance. Were we to do so, the government would bear the expense of defending even its reasonable positions. Because the Equal Access to Justice Act contemplates deterring only unreasonable government positions, this too would contravene the purposes of the Act. The only solution consonant with the legislative intent as we discern it, is to charge the United States with that portion of the expenses attributable to its unjustifiable positions.[5]

This formulation is consistent with this court's approach to the allocation of attorneys' fees under other fee-shifting statutes as well. In *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976), and *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973), this court stated the general principle that the prevailing plaintiff's compensation should be proportionate to the extent to which the plaintiff prevailed in the action. We have interpreted this principle to require that the district courts analyze "the results obtained by the petitioning party *on particular claims.*" *Hughes v. Repko,* 578 F.2d 483, 486 (3d Cir.1978) (emphasis added). The district courts should "give the

---

**5.** We note that the language of section 2412(d)(1)(A) is borrowed directly from Fed.R. Civ.P. 37(a)(4), permitting the court to tax with costs a party opposing a discovery motion if the party's opposition to the motion is not substantially justified. Rule 37(a)(4) then adds a provision for the apportionment of costs if the motion is granted in part and denied in part:

> If the motion is granted in part and denied in part, the court may apportion the reasonable

expenses incurred in relation to the motion among the parties and persons in a just manner.

We recognize that § 2412 contains no similar provision for apportionment of fees and expenses. Yet to our mind, just as the Equal Access to Justice Act has borrowed the term "substantial justification" from Rule 37(a)(4), so too has it implicitly borrowed the principle of apportionment.

petitioner credit only for the hours of legal service reasonably supportive of" the plaintiff's successful claims. *Id.* at 487.

In this case, the expenses reasonably necessary for Katz to succeed were those charges devoted to establishing that the A.O. acted arbitrarily, capriciously, and in disregard of its bid specifications in hiring Abovitz and Nitchie. Under this principle, therefore, Katz would recover those (and only those) costs associated with defeating the government's defense to this claim—provided, as the Equal Access to Justice Act requires, that the district court concludes that the government was not substantially justified in resisting it.

The district court, however, made no findings on whether the government was substantially justified in opposing Katz's claim that the hiring of Abovitz and Nitchie was arbitrary and capricious. Nor did the district court make a finding that Katz was a "prevailing party" within the meaning of the Act.[6] These are questions to be answered by the district court in the first instance.

Moreover, in the event the answers to these questions result in findings that Katz was a prevailing party and the government's defense to the claim of arbitrariness was not substantially justified, the district court must determine which portion of Katz's fee application is related to litigation over the government's unjustified position. *See, e.g., Hughes v. Repko, supra,* 578 F.2d at 486–87. We believe that the guidelines announced in our attorneys' fees decisions, including *Lindy Brothers, supra,* and its progeny, will be instructive in this respect.

### III.

The order of the district court entered on May 29, 1982 which denied Katz's applica-

---

**6.** Under 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980), a party is entitled to attorneys' fees only if he is a "prevailing party." The district court stated in its opinion on the merits that "we shall merely enjoin the A.O. from awarding the contract to defendants Abovitz & Nitchie or to other unresponsive bidders. This shall not preclude the A.O. from awarding the contract to the lowest responsive bidder or from conducting a new solicitation for bids." *Goldhaber v.*

tion for attorneys' fees and expenses will be reversed and remanded for proceedings consistent with this opinion.

---

JAMES HUNTER, III, Circuit Judge, dissenting:

I respectfully dissent.

The majority remands this case for findings as to whether or not the government's position was substantially justified. This question is, of course, pivotal.

I believe that the District Court has in fact made a finding that the government was substantially justified. He said (App. at 144):

> Basically, the most plaintiffs can argue is that on the one point on which plaintiffs prevailed, the government was not justified in opposing plaintiffs' position. That one point is the conclusion of the court that the bidders who were awarded the contract were not qualified under the terms of the contract solicitation. This issue was not an insignificant one, by any means, for it resulted in plaintiffs' achievement of their primary goal: To keep their jobs as reporters. But the mere fact that the government lost on this one issue does not mean that their position in the entire case was not substantially justified. We believe the Act contemplates a view of the entire proceedings, not an issue-by-issue analysis. The government need not produce a flawless case. Congress' choice of the word "substantially" indicates that there is some room for error. Taken as a whole, it is our view that the government was "substantially justified" in taking the position it did in this matter.

*Foley,* 519 F.Supp. 466, 482 (E.D.Pa.1981). Accordingly, the court did not award the contract to Katz. Katz apparently entered into a contract with the A.O. only after Katz's action was dismissed by stipulation, as moot. *See* Government Brief, at 16.

Under these circumstances, Katz's status as a prevailing party for the purposes of § 2412(d)(1)(A) is unclear.

I agree with the District Court's analysis. Its finding, fully supported in the record, is to me dispositive and makes a remand unnecessary.

I would affirm.