CITIZENS COUNCIL OF DELAWARE COUNTY; Chester-Ridley-Crum Watersheds Association: Whiskey Run Rebellion; League of Women Voters of Swarthmore; Rhoda Gribbel; Roy Smith; Donna and Leonard Mammucari; John and Barbara Crowther; Alan and Margot Hunt; and Marion Lebeis, Appellees,

v.

Claude S. BRINEGAR, Secretary of Transportation of the United States and Jacob Kassab, Secretary of Transportation of the Commonwealth of Pennsylvania and Harry A. McNichol, Chairman, and Nicholas F. Catania and William A. Springler, Commissioners of Delaware County, and Gus D. Houtman, President, and James W. Davis, Theodore D. Hadley, Jr. and James J. McKeehen, Branton H. Henderson and Charles E. Weber, Members of the Park and Recreation Board of Delaware County and John J. Shields, President, and Anthony Daliessio, John D. Donald, Peter J. O'Keefe, Norman R. Lincoln, John Haller, Charles S. Bottino, W. Gordo Atherholt and Samuel B. Morrelli, Members of the Ridley Township Board of Commissioners, Appellants.

MARPLE TOWNSHIP and Radnor Township and Swarthmore College Ashwood Manor Civic Association, Appellees/Cross-Appellants,

v.

LEWIS, Drew, Secretary of Transportation of the United States and Larson, Thomas D., Secretary of Transportation of the Commonwealth of Pennsylvania and The Chester Group; The Honorable Edgar, Robert W.; The County of Delaware; The City of Chester; The Borough of Upland; The Borough of Trainer; The Borough of Eddystone; The Borough of Marcus Hook; The Delaware County Chamber of Commerce; The Delaware County AFL–CIO Council; The Committee for the Blue Route; Hart, David K.; Jordan, Richard C., Jr. and Clayton, Howard J.; The Greater Philadelphia Chamber of Commerce Penjerdel Council and the Borough of Prospect Park, Appellant/Cross-Appellee.

MARPLE TOWNSHIP and Radnor Township and Swarthmore College Ashwood Manor Civic Association, Appellants,

v.

LEWIS, Drew, Secretary of Transportation of the United States and Larson, Thomas D., Secretary of Transportation of the Commonwealth of Pennsylvania and The Chester Group; The Honorable Edgar, Robert W.; The County of Delaware; The City of Chester; The Borough of Upland; The Borough of Trainer; The Borough of Eddystone; The Borough of Marcus Hook; The Delaware County Chamber of Commerce; The Delaware County AFL–CIO Council; The Committee for the Blue Route; Hart, David K.; Jordan, Richard C., Jr. and Clayton, Howard J.; The Greater Philadelphia Chamber of Commerce Penjerdel Council and the Borough of Prospect Park, Appellees.

Nos. 83–1669, 83–1697.

United States Court of Appeals, Third Circuit.

Argued May 21, 1984.

Decided Aug. 1, 1984.

F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., Edward S.G. Dennis, Jr., U.S. Atty., Susan Dein Bricklin, Asst. U.S. Atty., Philadelphia, Pa., Robert L. Klarquist, Maria A. Iizuka (argued), Attys., Dept. of Justice, Land & Natural Resource Div., Appellate Section, Edward V.A. Kussy, Deborah Dull, Federal Highway Admin., Washington, D.C., for appellant/cross-appellee.

Edward F. Mannino (argued) Marguerite S. Walsh, James J. Greenfield, Dillworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for appellees/cross-appellants.

Before GARTH and SLOVITER, Circuit Judges, and NEAHER, District Judge.*

## OPINION OF THE COURT

GARTH, Circuit Judge.

The primary question which we must answer in this appeal is whether a township or other governmental entity is a "party" within the meaning of that term as it is found in the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982). Marple Township and Radnor Township (the Town-

---

* Honorable Edward R. Neaher, United States District Judge for the Eastern District of New York, sitting by designation.

ships) claim to be such parties,[1] and therefore they seek an affirmance in major part of the district court judgment awarding attorneys' fees of $86,643.75 plus $2,511.67 in costs in favor of the Townships and two other entities. The Townships challenge, however, the hourly rate fixed by the district court in its calculation of the attorneys' fees. Thus the Townships have filed a cross-appeal.

The United States Department of Transportation (the Department), on the other hand, claims that Congress did not intend EAJA to operate in favor of such governmental entities as the Townships and it asks us to reverse the district court judgment awarding attorney fees. We hold that townships, such as the parties here, are not "parties" eligible for a fee award within the meaning of § 2412(d)(2)(B) of EAJA.

Because the underlying factual dispute leading to the district court order awarding fees is significant for an understanding of the positions taken by the parties here, we briefly recount the factual circumstances giving rise to this appeal.

## I.

Appellees/cross-appellants the Townships, along with Swarthmore College (the College) and Ashwood Manor Civic Association (the Civic Association), instituted an action against appellant/cross-appellee the Department, and the Pennsylvania Department of Transportation (PennDOT), that challenged the Department's conduct in implementing plans for a highway popularly known as the "Blue Route." The suit

sought an injunction barring construction of the Blue Route on the grounds that the Department had violated federal law, including the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq., and the Department of Transportation Act, 49 U.S.C. §§ 1651–1660 (1982) (repealed). (In a related action, Citizens Council of Delaware County challenged the Department's conduct with respect to a portion of the highway.) The plaintiffs alleged in major part that the Department had failed to prepare a proper supplemental environmental impact statement (EIS) pursuant to 23 C.F.R. § 771.14(i) (1980) (repealed) and a "4(f) statement" pursuant to section 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f) (1982) (repealed and substantially recodified at 49 U.S.C.A. § 303 (West Supp.1983).)[2]

The facts as reported in the district court opinion on cross-motions for summary judgment (App. 282–325) may be summarized as follows. The Blue Route had been in the planning stages for many years prior to the litigation. An initial formal plan for building a route to connect Interstate-95 and the Pennsylvania Turnpike in southeast Pennsylvania was proposed in 1961, and the highway was partially built beginning in 1967. After NEPA became effective in 1970, the Department prepared an EIS and a 4(f) statement for some segments. Litigation about the portion of the highway at issue in the case here resulted in a consent decree that required the Department to issue a new EIS/4(f) statement. A draft statement was issued, and public hearings were held. A preliminary

1. For ease in reference (unless otherwise indicated), we will refer throughout this opinion to the Townships as the plaintiffs and parties, even though Swarthmore College and Ashwood Manor Civic Association are parties to this appeal.

2. At the time of the litigation, 49 U.S.C. § 1653(f) ("§ 4(f)") provided as follows:

After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the

Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

The Townships claimed that the Secretary had failed to make any of the "4(f)" determinations required by the statute.

final statement was submitted to several federal agencies in 1978.

Some agencies criticized the statement, and the Department of the Interior questioned the lack of adequate consideration of alternatives as mandated by NEPA and § 4(f) of the Department of Transportation Act. The EPA also criticized the failure to consider alternatives. The Federal Highway Administrator (FHWA) refused to request the Secretary of Transportation to concur in the Final Statement; instead the FHWA suggested modifying the plan to reduce the scale of the highway. The Department and FHWA then formed a task force, which issued a report recommending various modifications in the highway plan. The report was incorporated into the Final EIS as an "addendum"; the body of the EIS was not changed. The Addendum stated, *inter alia*, that "Expressway encroachments in stream valleys have been significantly reduced" and that "As a result of the Task Force study, there will be major revisions to the previously completed final design discussed in the base Final EIS." (See App. 291).

The Final EIS/Section 4(f) Statement containing the Addendum was then submitted to the Secretary of the Department for the Secretary's required Section 4(f) determination that there were no alternatives to the plan, and that the plan minimized harm to public lands, *see* 49 U.S.C. § 1653(f) (1976) (repealed), *supra* note 2, and *infra* p. 22–23. The FHWA Deputy Administrator recommended that the Secretary do this as a "concurrence" in the recommendations contained in the statement; the Secretary then did so.

This final statement was approved by FHWA; notice of the action was published in the Federal Register in November 1980. Following further objections to the plan by the Department of Interior, FHWA agreed to various additional conditions to ensure compliance with environmental commitments contained in the EIS.

It was six months later that the Townships instituted the action above referred to. The suit by Citizens Council, which had been filed in 1974 and put into suspense, was then reactivated and consolidated with the Townships' suit.

On cross-motions for summary judgment, the district court held that the Department had violated NEPA and the Department of Transportation Act by issuing an inadequate supplemental EIS and 4(f) statement after the plan was revised. The court, *inter alia*, granted the plaintiffs' request for injunctive relief, enjoining the Department from proceeding further with work on the Blue Route until a supplemental EIS and 4(f) statement was prepared; the court also enjoined PennDOT from using any federal funds to work on the Blue Route until the proper EIS/4(f) statement issued. *Marple Township v. Lewis, Secretary of Transportation*, No. 81–4627 (E.D.Pa. August 30, 1982); *Citizens Council of Delaware County v. Secretary of Transportation*, No. 74–925 (E.D.Pa. August 30, 1982). This decision was not appealed.

The Townships, the College, and the Civic Association then jointly petitioned the district court for an award of attorneys' fees under EAJA.

The district court on January 28, 1983, held that the plaintiffs were eligible parties under EAJA. The court held that the Townships qualified as eligible "parties" under 28 U.S.C. § 2412(d)(2)(B)(iii): "a sole owner of an unincorporated business, or a partnership, corporation, association or organization, having not more than 500 employees at the time the civil action was filed . . . ;" it held that the College qualified as a tax-exempt entity under *id.* § 2412(d)(2)(B)(ii); and it held that the Civic Association qualified under *id.* § 2412(d)(2)(B)(iii) as an "association or organization, having not more than 500 employees." The court further held that the Department was not "substantially justified" in advancing its legal position within the meaning of EAJA § 2412(d)(1)(A) and that special circumstances did not make an award of attorneys' fees unjust, under that same subsection.

After the parties submitted arguments on the amount of the fee award, the court on July 12, 1983, granted the plaintiffs' petition in part, first reaffirming its earlier holding that the Department's position was not substantially justified. The court held most of the requests for fees and costs to be substantiated by the evidence produced in their support, and granted those requests to the extent they found support. However, the court found that no "special factors" within the meaning of EAJA § 2412(d)(2)(A) justified permitting an hourly fee greater than $75/hour. With the limitations noted, the court granted the plaintiffs' petition.

The Department appealed (at No. 83–1669) from the court's orders of January 28, 1983 and July 13, 1983, which granted the petition in part; the Townships, the College, and the Civic Association cross-appealed (at No. 83–1697) from that part of the district court's order of July 13, 1983 which limited the rate at which fees were calculated to $75 per hour.

We conclude that the Townships were not "parties" eligible for fees under EAJA, but because two other plaintiffs are eligible for fee awards, we hold the fees awarded by the district court to be reasonable, and we affirm the $75 rate at which they were calculated. We reverse and remand to the district court for a determination and apportionment of the fees to which the two remaining prevailing plaintiffs are entitled in light of óur decision.

## II.

A threshold requirement for obtaining attorneys' fees under EAJA is that the petitioner be an eligible "party" within the meaning of EAJA, 28 U.S.C. § 2412(d)(2)(B). That provision states in pertinent part:

(B) "party" means (1) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed, except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of the Code and a cooperative association as defined in section 15(a) of the Code and a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141(a)), may be a party regardless of the net worth of such organization or cooperative association, or (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization, having not more than 500 employees at the time the civil action was filed; ....

The Department contends that governmental bodies, such as the Townships, are not "parties" within the meaning of this provision.

Obviously, the first clause of the statute, because it refers only to individuals, has no application to this case where no individuals are parties. The question thus is whether a township falls within the definitions of the second or third clause of the statute. We hold that it does not and that accordingly, governmental bodies are not to be deemed "parties" within the meaning of EAJA.

First, § 2412(d)(2)(B)(ii), which refers to a net worth not exceeding $5,000,000, is not easily made applicable to governmental bodies. Indeed, counsel for the Townships admitted as much in oral argument before this court.

Second, and more important, the legislative history of EAJA indicates an unequivocal congressional intent to exclude governmental bodies from the statute's purview even if the statute could be construed on its face to include them.

■ The general intent underlying EAJA was to remedy the imbalance of means that has been thought to deter impecunious litigants from seeking review of, or defending against, unreasonable governmental action. By providing that prevailing parties would be entitled to attorneys'

fees and costs, EAJA was intended to reduce the effect of the disparity in resources. *See* H.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, 9–10 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News at 4984, 4988–89.

The legislative history of the statute in general indicates that EAJA was primarily intended to benefit individuals and small businesses:

> While the influance [sic] of the bureaucracy over all aspects of life has increased, the ability of most citizens to contest any unreasonable exercise of authority has decreased. Thus, at the present time, the Government with its greater resources and expertise can in effect coerce compliance with its position. Where compliance is coerced, precedent may be established on the basis of an uncontested order rather than the thoughtful presentation and consideration of opposing views. *In fact, there is evidence that small businesses are the target of agency action precisely because they do not have the resources to fully litigate the issue.* This kind of truncated justice undermines the integrity of the decision-making process.

H.Rep. No. 1418, *supra,* at 10, reprinted in U.S.Code Cong. & Ad.News at 4988 (emphasis added). Similarly, the legislative history of the "party" provision indicates that individuals and small businesses were the intended primary beneficiaries:

> The definition of "party" is consistent with section 551(3) of title 5, and includes a "person" named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in an agency proceeding, and a "person" admitted by an agency as a party for limited purposes.
>
> *The definition of "person" in this subsection identifies those individuals, businesses and organizations which may recover fees and expenses under this section.* Those persons eligible to recover fees include individuals whose net worth does not exceed one million dollars and sole owners of unincorporated businesses, partnerships, corporations and associations or public or private organizations whose net worth does not exceed five million dollars. Excluded from the net worth limits are cooperative associations as defined in the Agricultural Marketing Act (12 U.S.C. 1141s(a)) and organizations described in section 501(c)(3) of the Internal Revenue Code of 1954 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of the Code. No business would be eligible if it employed more than 500 employees. The definition thus establishes financial criteria which *limit the bill's applications to those persons and small businesses for whom costs may be a deterrent to vindicating their rights.* "Net worth" is calculated by subtracting total liabilities from total assets. In determining the value of assets, the cost of acquisition rather than fair market value should be used.

*Id.* at 15, reprinted in 1980 U.S.Code Cong. & Ad.News at 4994 (emphasis added).

Congress did not limit the reach of the Act just to those primary beneficiaries, as is evident from the inclusion of small "associations" and "organizations" in the definition of "party." Apparently Congress determined that such entities were equally deterred from challenging unreasonable federal governmental action, and that the public interest would be equally well served by the mitigation of this deterrent factor in cases involving such entities.

Governmental bodies, however, do not immediately spring to mind as being obvious candidates for inclusion in this expanded category of small businesses, associations, and organizations. As governmental entities, they have the unique ability to obtain funding via the imposition of taxes. Moreover, because of their political nature they may have additional means or resources available to resist unreasonable federal action that other, nonpolitical entities do not have and cannot employ.

However, one not unreasonable construction of the term "organization" is the dic-

tionary definition, which does include governmental bodies:

> organization: organization includes a corporation, *government or governmental subdivision or agency,* business trust, estate, trust, partnership or association, two or more persons having a joint or common interest, or any other legal or commercial entity.

Black's Law Dictionary, 991 (5th ed. 1979) (emphasis added). It is arguable that Congress may have determined that small governmental bodies are as vulnerable to unreasonable federal governmental action as are other entities, and that they too may lack the resources to litigate such actions, so that permitting their recovery of attorneys' fees is proper.

■ That this meaning is a possible one does not mean that it is the one that Congress intended. As was recently stated by this court,

> To discern Congress' intent ... we begin with the language of the statute itself because we presume that the words Congress has chosen best reflect the legislative purpose. *Consumer Products Safety Comm'n. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Nevertheless, the approach is not one of slavish literalism, for "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918) (Holmes, J.). We reject a view that would make "a fortress out of a dictionary," remembering instead that "statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), *aff'd* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Thus, although the literal meaning of the words chosen by Congress is respected, we no longer follow a rigid, semantic approach to statutory construction, lest we construe a statute within its letter, but beyond Congress' intent.

*United States v. Rabb,* 680 F.2d 294, 296 (3d Cir.), *cert. denied,* 459 U.S. 873, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982).

■ We thus examine legislative history to determine Congress' specific intent with respect to this issue. A key colloquy between Senator DeConcini, a sponsor of the Senate bill, and Representative Kastenmeier, chairman of the House Subcommittee considering the bill as passed by the Senate, that occurred during the subcommittee hearings on the legislation indicates that Congress did not intend to include governmental bodies:

> Mr. Kastenmeier. Because you have devoted so much time to this, and I take it, covered a number of issues which must derive, I would like to go to the question of scope.
>
> \* \* \* \* \* \*
>
> And it would by its very nature exclude small governmental units?
>
> Senator DeConcini. It does.
>
> Mr. Kastenmeier. I say that because here at this very moment the full committee is marking up a regulatory format which arises somewhat out of Senator Domenici's concerns, which appears to be directed to reform the burdens not only of small business but a number of organizations, including governmental units.
>
> And I was wondering if there was a school board sued by the Federal Government and they prevailed whether they might be entitled to this?
>
> Senator DeConcini. Mr. Chairman, we did not—we gave it some consideration, but we were primarily interested in bringing some relief to the individual and small businessman. And I think the point is well-taken as to enforcement of other governmental agencies by the Federal Government.
>
> And, quite frankly, I would hope that your committee would consider that. I

think its a very vital point that ought to be considered.

We have, in Arizona, I can think just offhand of a number of small counties with school districts that have a very difficult time meeting legal fees, and rely on the local county attorney, who has a one-man office that can't afford to contest whether its a civil rights violation or the enforcement of a requirement of education rules.

And we have just gone through assisting one small county there to convince that [sic] there was not a violation of the civil rights as it related to Indians; and that county spent about $2,000 on attorneys' fees, traveling here, and making that argument—that we helped them make.

It's a very good point. And this bill, S. 265, does not make any provision for that.

*Award of Attorneys' Fees Against the Federal Government.* Hearings on S. 265 before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice, of the House Judiciary Committee, 96th Cong., 2d Sess. 31–32 (1980). Since Congress did not change the pertinent definitional language before passing the bill that was the subject of the colloquy,[3] we can only conclude that there was an intent to exclude governmental bodies from EAJA's reach.[4] *See also Commissioners of Highways of Towns of Annawan v. United States,* 684 F.2d 443, 445 (7th Cir. 1982) (dictum) ("[W]e do not believe that governmental bodies ... were intended to come within the scope of the Act.") Accordingly, we hold that governmental entities, such as the Townships, are not "parties" within the meaning of EAJA. We will reverse the district court's order in this respect.

### III.

Our decision that the Townships are not entitled to attorneys' fees does not dispose of the appeal from the order granting fees, or the cross-appeal, because two other plaintiffs (the College and the Civic Association), neither of which is a governmental body, joined in the petition. Thus we must pass on the other issues raised by the Department: whether the Department's position was "substantially justified," whether the district court erred in failing to apportion fees properly, and whether the fees are reasonable.

### A.

■ Fees are not available under EAJA if the government's "position" was "substantially justified" within the meaning of § 2412(d)(1)(A).[5] The Government has the burden of proving that its position was substantially justified. *Dougherty v. Lehman,* 711 F.2d 555, 561 (3d Cir.1983).

The "position" that the Government must justify, which has been the subject of much controversy, *see generally* Note, The Equal Access to Justice Act in the Federal Courts, 84 Colum.L.Rev. 1089, 1102–1111 (1984), has recently been interpreted by

---

**3.** There was a change made, in that the alternative "500 employee" limit was added to the final version of the definition, but the legislative history does not suggest that this change in language was addressed to the specific issue of governmental bodies; rather the language affects "all parties." 126 Cong.Rec. S 13,874 (daily ed. Sept. 30, 1980) (remarks of Sen. DeConcini).

**4.** An interpretation given by a sponsor of predecessor legislation is to be given weight at least where the operative language was substantially carried forward into the enacted legislation. See *United States v. Enmons,* 410 U.S. 396, 404–05 n. 14, 93 S.Ct. 1007, 1012 n. 14, 35 L.Ed.2d 379 (1973).

**5.** Section 2412(d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

this court to refer to both the litigation position taken by the agency and the agency's conduct that was the subject of the litigation. *Dougherty, supra,* 711 F.2d at 563 n. 12; *Natural Resources Defense Council v. EPA,* 703 F.2d 700, 706–12 (Gibbons, J., opinion announcing the judgment of the court); *id.* at 714–17 (Thompson, J., concurring).

■ The test is "essentially one of reasonableness." *Dougherty, supra,* 711 F.2d at 561 (quoting H.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News at 4989). We employ a three-stage analysis:

> [F]or the government to show that its position had a "reasonable basis in both law and fact" it must:
>
> First, show that there is a reasonable basis in truth for the facts alleged in the pleadings. If no such basis for the government's factual allegations exist, then the government's position may well be held not to be "substantially justified."
>
> Second, the government must show that there exists a reasonable basis in law for the theory which it propounds. This is not to say that the government need demonstrate that there is a substantial probability that the legal theory advanced by it will succeed.
>
> Finally, the government must show that the facts alleged will reasonably support the legal theory advanced. Thus, having met these requirements, if the government's legal theory, as applied to the facts, reasonably supports the Secretary's position, even though the government may not have ultimately prevailed, then the government will have proven that the "position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

*Dougherty,* 711 F.2d at 564.

■ Using this analysis, the district court correctly concluded that the Department's position was not substantially justi-

fied. With respect to the Department's failure to issue a supplemental EIS, the court correctly held that the third prong of the three-part test was not satisfied. There is no dispute as to the truth of the Department's version of the facts.

The Department argued that it did not have to issue a supplemental EIS upon altering its plan where alterations would be beneficial to the environment. Under the regulation in force at the pertinent time, 23 C.F.R. § 771.14(i) (1980), a supplemental EIS was required to be furnished in certain circumstances:

> (i) The final EIS shall be reevaluated by the HA [State Highway Agency] and the FHWA prior to proceeding with major project activities for the purpose of determining whether there has been a substantial change in the social, economic and environmental effects of the proposed action. If there are substantial changes in the proposed action that would significantly affect the quality of the human environment, a supplemental statement shall be prepared.

Prior to the district court's holding here that the failure to issue a supplementary EIS violated the Department's duties, several courts had held that it was irrelevant whether or not proposed changes were intended to reduce adverse environmental impacts. *E.g., Environmental Defense Fund v. Marsh,* 651 F.2d 983 (5th Cir.1981). After the district court's decision, this court in *Township of Springfield v. Lewis,* 702 F.2d 426, 437–38 (3d Cir.1983), held that an EIS need not be prepared where the changes constitute improvements in mitigation techniques and are "essentially a specification and modification" of those discussed in the EIS. (Quoting *Concerned Citizens on I–190 v. Secretary of Transportation,* 641 F.2d 1, 6 (1st Cir.1981)). *Lewis* distinguished the Fifth Circuit's decision in *Marsh, supra,* by noting that the changes at issue in *Lewis* were of a much smaller magnitude than those in *Marsh.*

The Department here argues that *Lewis* supported its position because the Department approved the nonissuance of a supplementary EIS where changes would not have an adverse impact on the environment. But, as the district court held, the facts here do not support such a legal theory, inasmuch as the district court had determined from undisputed facts that the changes were "substantial" and based upon "significant" new information. (See App. 564–65.) In addition, the district court observed that "no responsible official or agency has made an express finding or determination that adoption of the Task Force recommendations will cause no additional, increased or different harmful effects." (App. 298). Thus even if a new plan contained minor changes that would have had no adverse effect, or an agency determined that the changes would have no adverse effect, and either circumstance would support the nonissuance of a supplemental EIS (but see *Marsh, supra* (intention of agency irrelevant)), the facts here do not support such a legal theory, and this is so even though the theory itself finds a reasonable basis in law. As a result, we conclude that the third part of the "substantial justification" test has not been satisfied.

As to the second violation found by the district court, that is, the inadequacy of the "4(f)" statement, the Department does not even make an argument that the agency's position was justified. At the time of the litigation, the Department of Transportation Act, 49 U.S.C. § 1653(f) (1982) (repealed, recodified in substantial part at 49 U.S.C.A. § 303 (West Supp.1983)) ("section 4(f)") provided as follows:

> After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

Because no action was taken by the Secretary to correct the section 4(f) deficiencies after they were called to his attention, the district court properly noted that "the Section 4(f) Statement relied on by the government was not only inadequate but left grave doubt as to whether the Secretary had properly exercised his authority." (App. 565). This clearly does not admit of an argument for substantial justification.

The Department contends that the district court confused a one-dimensional "prevailing party" analysis with a "substantial justification" analysis. But the district court's opinion of July 12, 1983, does not reveal any such error. Rather, the district court employed the same *Dougherty* three-prong analysis that we have employed here. And, as we hold here, the district court's conclusion that no substantial justification was shown by the government was correct.

## B.

The Department also contends that the district court abused its discretion in failing to apportion the award of fees according to the claims on which the plaintiffs actually prevailed. Apportionment is a subsidiary question in the ultimate determination whether an award of fees is "reasonable" under EAJA § 2412(d)(2)(A). Our scope of review is narrow. The determination of whether attorneys' fees are reasonable is for the district court, *Ursic v. Bethlehem Mines*, 719 F.2d 670, 674 (3d Cir. 1983). This court, which will reverse the district court's award of attorneys' fees

only for abuse of discretion, *id.* at 674, does not review *de novo* the reasonableness of a fee petition. "Absent error of law, determination of the reasonableness of the fee is for the district court ...." *Id.* at 675.

■ It is true, though, that this court, while declining to "interject itself into the minutiae underlying [the district court's] judgments" of reasonableness, does retain the obligation to reverse a decision that falls outside the zone of reasonableness. *Danny Kresky Ents. v. Magid,* 716 F.2d 215, 217 (3d Cir.1983). "A district court is considered to have abused its discretion, if 'no reasonable [person] would adopt the district court's view ... [or] when the trial court uses improper standards or procedures in determining fees, or if it does not properly identify the criteria for such determination.'" *Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.,* 727 F.2d 279, 285 (3d Cir.1983) (quoting *Silberman v. Bogle,* 683 F.2d 62, 65 (3d Cir.1982)) (brackets and omissions in original); *see generally Lindy Brothers, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) (*Lindy II*); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*). However, we find no abuse of discretion here.

In *Goldhaber v. Foley,* 698 F.2d 193 (3d Cir.1983), we held that EAJA entitles a plaintiff to "charge the United States with that portion of the expenses attributable to its unjustifiable positions," *id.* at 197 (footnote omitted), and not with "the entire expense of litigation," where the United States has prevailed in at least one aspect of the action, *id.* The district court must determine which portion of the prevailing party's fee application is related to litigation over the government's unjustified position. *Id.* at 198.

Our holding in *Goldhaber* was reaffirmed in *Dougherty v. Lehman, supra,* 711 F.2d at 560. The approach outlined in

*Goldhaber* was also taken by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a case dealing with attorneys' fees under 42 U.S.C. § 1988.

In holding here that the plaintiff's request for fees would not be reduced on the ground that the plaintiffs had not prevailed on all their claims, the district court stated:

I do not read the recent *Goldhaber* decision as requiring that I apportion costs according to individual points of argument won and lost. Such an approach would turn litigation such as this, already cumbersome by its very nature, into a competition where relating point scores for each argument would be totaled, perhaps analogous to such athletic competitions as diving, skating, ski-jumping and equestrian meets. Rather, major claims must be considered. In this action, plaintiffs prevailed on each count for which summary judgment was sought. Even though I did not reject every argument raised by the Secretary, in view of the deficiencies in the procedures followed by the government, the Secretary's position cannot be reasonably termed *substantially* justified.

(App. 487).

The district court's analysis properly followed the *Goldhaber* apportionment principle. The court was correct to reject any suggestion that the court should focus on discrete arguments rather than essential claims. As the Supreme Court observed in *Hensley, supra,* the plaintiff may "present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories," so that "work on one claim will be unrelated to the work on another claim." 103 S.Ct. at 1940. The district court's task is therefore to identify the claims that the plaintiff's suit presented, to determine which claims were successful, and apportion the plaintiff's compensation accordingly.

In this case the Department argues that the plaintiffs were not entitled to fees for

their work on five of the eight "claims for relief" asserted in the complaint, on which the plaintiffs requested summary judgment. All the claims, however, were substantially related to each other, in that the essential legal theory advanced by the plaintiffs against the Department was that the Department had violated NEPA and the Department of Transportation Act in failing to issue a proper EIS and 4(f) statement. Indeed, the plaintiffs' motion for summary judgment was not grounded on the separate claims for relief asserted in the complaint but rather on the several legal theories on which the claims rested. (App. 40–42). The court granted summary judgment for the plaintiff, and denied the defendants' motion for summary judgment. In doing so, the court rejected some of the particular arguments that the plaintiffs had offered in support of the legal theories on which it ultimately prevailed, while taking these arguments into account in shaping the scope of relief.[6]

■ On these facts it is clear that there was a sufficient interrelationship among the essential claims advanced by the plaintiff in the course of the litigation that the district court was not required to apportion fees based on the success or failure of any particular legal argument advanced by the plaintiffs.

## C.

■ The Department's second challenge to the District Court's determination that the fee award was reasonable is the Department's argument that the averments of hours spent were excessive and unsubstantiated. We are not persuaded. There is sufficient substantiation if the submissions provide "fairly definite information as to the hours devoted to various general activities." *Lindy I*, 487 F.2d at 167. The affidavits submitted by plaintiffs' attorneys adequately documented the time spent

on the litigation. Thus the court's determination of reasonableness cannot be faulted on the ground of inadequate substantiation.

As to the issue of excessive hours, the district court properly considered relevant factors in determining whether to reduce the number of hours compensable in a reasonable fee. The court noted "the voluminous documents forming the basis for the complaint, the long history of the construction of the Blue Route and the issues involved." (App. 573).

The Department argues that the time spent by attorney Hellegers in preparing the papers for summary judgment (507.50 hours) was excessive, in view of Mr. Hellegers' legal background (his 18 years of experience, including 6 years as counsel for the Environmental Defense Fund). The district court acknowledged that the time spent was greater than for an "average" action but did not find it to be excessive in light of the difficult nature of the litigation. We do not find that conclusion to be arguable.

The Department also contends that there were many duplicative hours spent by the several attorneys for the plaintiffs. We do not read the submissions to show duplicative efforts; rather the district court's finding that the case is one of exceptional difficulty suffices to support the finding that the hours spent contributed to the result obtained. The court's opinion set forth the hours attributable to counsel and multiplied those hours by the appropriate hourly charge, as follows:

| | | *Requested* | *Granted* | | |
|---|---|---|---|---|---|
| E.F. Mannino | ($170) | $75 x | 119.00 hours = | $ 8,855.00 |
| J.F. Hellegers | (145) | 75 x | 507.50 hours = | 38,062.50 |
| M.S. Walsh | (85) | 75 x | 434.75 hours = | 32,606.25 |
| J.J. Greenfield | (65) | 65 x | 28.00 hours = | 1,820.00 |
| T.T. Myers | (50) | 50 x | 106.00 hours = | 5,300.00 |
| [paralegal] | | | | |
| | TOTAL ATTORNEYS' FEES | | | $86,643.75 |

We hold that the district court was correct as to reasonable hours spent.[7]

---

**6.** For example, the court held that the Draft and Final EIS were not invalid for failing to adequately address alternatives, but also held that because a supplemental EIS would be required, that the EIS should discuss alternatives.

## D.

The plaintiffs' cross-appeal is addressed to the hourly rate at which the district court set attorneys' fees. The plaintiffs contend that EAJA § 2412(d)(2)(A), which provides for a maximum $75 per hour charge, should not be applicable in this case. As set forth above (see table), the plaintiffs sought to have their attorneys' hourly rates fixed at from $65 to $170 per hour depending on the status of the particular individual lawyer.

The statute provides, "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Here, plaintiffs' counsel admitted at oral argument that any cost-of-living increase had been waived. Thus unless the district court found a "special factor" to exist, such as the limited availability of qualified attorneys for this type of proceeding, the rate which the district court assessed could not be increased.

The district court found that there was no limited availability of environmental lawyers, and we have not been pointed to anything in the record that undermines that finding. Nor was the district court persuaded that the plaintiffs' attorneys' work was so outstanding that it would justify an increase in the hourly rate. The district court is in the best position to judge the quality of the work performed by the attorneys who appear before it, and here, while the district court recognized that plaintiffs' counsel were exceptionally qualified, nevertheless it found that no "special factor" existed which would merit a rate in excess of $75 per hour.

■■■ Nor do we find persuasive the argument that to cap the hourly rate at $75 per hour is bad policy because that will discourage litigation against unreasonable governmental action. That argument has already been answered by EAJA itself, which rejects an unlimited hourly fee. To justify a rate greater than the statutory maximum, something more must be present than unreasonable governmental action. Accordingly, the cost-of-living factor having been waived, the district court did not err in holding there to be no other special factors justifying a rate higher than that provided by the statute.

We may summarize our analysis so far as follows. The Townships are not eligible parties under EAJA. The fee and reimbursement award was otherwise reasonable.

Only two of the four plaintiffs (the College and the Civic Association) represented by the attorneys who submitted the fee petition were eligible to obtain fees under EAJA. However, the petition was submitted jointly, as to four plaintiffs; the attorneys did not apportion their fee request among the plaintiffs.

It was represented to us in the appellees' brief (p. 17 n. 20) and at oral argument that the plaintiffs had agreed among themselves that Swarthmore College and Ashwood Manor Civic Association would be entitled to a proportionate share of reasonable attorneys' fees. EAJA itself makes no provision for apportionment of a joint fee award among multiple plaintiffs where not all those plaintiffs are eligible parties.

■■■ Like the determination of reasonableness of the fee, the determination of a fair attorneys' fee is appropriately left for the district court's consideration. The effect of any agreement among the parties

---

**7.** The plaintiffs also sought $4,991.44 reimbursement for costs. The district court in a careful analysis reduced charges for expenses incurred for overtime, meals, carfare, local transporta-

tion and other miscellaneous costs, so that the total amount awarded was $2,511.68, together with the attorneys' fees of $86,643.75. (App. 573)

is for the district court to decide in the first instance. We will therefore remand the case for a determination of the fees allocable to the remaining two plaintiffs represented in the fee petition.

### V.

We will therefore reverse so much of the district court's orders dated January 28 and July 13, 1983 (appealed at 83–1669) as permitted the Townships to recover fees under EAJA.

We have also held that the basis upon which the attorneys' fees were calculated was correct and that the attorneys' fees and costs based on that calculation were reasonable. However, it is evident that in light of our construction of EAJA to preclude the eligibility of the Townships to participate in the fee award, and even though the district court was correct in establishing a $75 hourly maximum rate, we cannot affirm the July 13 order of the district court, which awarded a total of $89,155.43 in fees and costs to all four plaintiffs. That order would award fees to four plaintiffs and only two of the four are eligible for attorneys' fees. Under these circumstances we are obliged to reverse the July 13, 1983 order appealed at 83–1697 and we will remand to the district court for a determination of the attorneys' fees and costs to which Swarthmore College and Ashwood Manor Civic Association are entitled.

Each party will bear its own costs on these appeals.